591 F.Supp. 403 (1984)
Bill WILKINSON
v.
Lester FORST, individually and in his official capacity as Deputy Commissioner of Public Safety for the State of Connecticut; Donald Long, individually and in his official capacity as Commissioner of Public Safety for the State of Connecticut; Austin McGuigan, in his official capacity as Chief State's Attorney for the State of Connecticut; and the City of Meriden.
Civ. No. H80-755.
United States District Court, D. Connecticut.
July 11, 1984.
*404 *405 Matthew Horowitz,[*] West Hartford, Conn., for plaintiff.
Richard T. Biggar, Stephen J. O'Neill, Hartford, Conn., for defendant State of Conn.
Thomas J. Hagarty, Robert J. Hebron, John W. Lemega, Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for defendants Lester Forst and Donald Long.
John M. Massameno, Asst. State's Atty., Scott J. Murphy, Deputy Asst. State's Atty., Carl Schuman, Asst. State's Atty., Wallingford, Conn., for defendant Austin J. McGuigan.
Dennis A. Ceneviva, Corp. Counsel, Meriden, Conn., for defendant City of Meriden.

RULING ON DEFENDANT AUSTIN McGUIGAN'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT
JOSÉ A. CABRANES, District Judge:
The question presented by this litigation is whether stopping and searching persons in attendance at a political rally in the absence of individualized suspicion infringes on rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff Bill Wilkinson, Imperial Wizard[1] of the Invisible Empire Knights of the Ku Klux Klan ("Klan"), brought this action under 42 U.S.C. § 1983[2] alleging that the practice of stopping and searching all participants at *406 Klan rallies in Connecticut violates his constitutional rights of free speech, assembly, association and privacy, freedom from unreasonable searches and seizures, and due process of law. The constitutionality of the challenged practice turns on principles of general applicability and is in no sense a function of the personal views of the plaintiff or the values or policies of the Klan.
The Klan maintains its principal offices in Denham Springs, Louisiana, see Exhibit L ¶ 4, Plaintiff's Summary Judgment Exhibits (filed Dec. 12, 1983) ("Plaintiff's Exhibit ___"), but the organization is quite active in Connecticut. Since September 1980, the Klan has conducted fifteen rallies in the state, on both private and public property. See Plaintiff's Memorandum of Law in Opposition to Defendant's Motions for Summary Judgment and Dismissal (filed Dec. 20, 1983) at 1-3 ("Plaintiff's Memorandum"); Compliance with Order (filed June 22, 1984) at 1-2. Before twelve of the fifteen rallies, law enforcement officials obtained orders from the Connecticut Superior Court enjoining the possession of weapons within a designated area surrounding the rally site. All but the first of those orders authorized the Connecticut State Police and local police departments to stop persons approaching a rally, question them concerning their possession of weapons and, "where appropriate," search them. See Exhibits 4-8, List of Exhibits Submitted in Support of Motion for Summary Judgment (filed Oct. 28, 1983) ("Defendant's Exhibit ___"); Plaintiff's Exhibits E, F & S; Compliance with Order, supra, Attachments 1-4.
The following table indicates the location of each of the fifteen rallies, the date or

 Location Date(s) Property Order
 Scotland Sept. 13-14, 1980 Private No[3]
 Meriden I Mar. 21, 1981 Private No
 Meriden II July 11, 1981 Private No
 Windham Oct. 10-11, 1981 Private Yes
 Meriden III Mar. 20, 1982 Public Yes[4]
 Danbury Aug. 7-8, 1982 Private Yes
 Norwich Aug. 11, 1982 Public Yes
 Canterbury Aug. 14, 1982 Private No[5]
 Meriden IV Apr. 30, 1983 Public Yes
 New Britain I June 25, 1983 Public Yes
 Stratford Sept. 10, 1983 Public Yes
 Wallingford Apr. 28, 1984 Public Yes
 West Haven Apr. 28, 1984 Public Yes[6]
 Groton Apr. 29, 1984 Public Yes
 New Britain II Apr. 29, 1984 Public Yes

*407 dates on which it was held, the type of property involved and whether an order permitting stops and searches was obtained.
Id.; see Plaintiff's Memorandum at 1-4.
Plaintiff contends that the practice of stopping and searching persons at Klan rallies in Connecticut "causes annoyance and embarrassment to spectators and participants," deterring members of the public from attending. As a result, plaintiff maintains, his efforts to recruit new members for the Klan and "to associate with persons of similar views so as to share ideas and maximize the impact of the organization on the political process" have been hindered. Plaintiff's Memorandum at 5.
Defendant Austin McGuigan, the Chief State's Attorney, has filed a motion to dismiss, asserting that plaintiff has no standing to maintain this action, that it is moot, and that it is not ripe for decision.[7] In ruling on this motion, the court intimates no view on the merits of plaintiff's claims. See Rule 12(b)(6), Fed.R.Civ.P. Rather, assuming all of the material allegations of the complaint to be true, see Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174-175, 86 S.Ct. 347, 348-349, 15 L.Ed.2d 247 (1965), and construing the complaint liberally in plaintiff's favor, see Scheuer v. Rhodes, 416 U.S. 232, 236-237, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974), the court must decide whether the complaint states any claim upon which relief may be granted, see Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). Only if plaintiff's claims are completely meritless can the case be dismissed at the pleading stage.
In addition, defendant McGuigan has moved for summary judgment, contending that there are no disputed issues of material fact and that he is entitled to judgment as a matter of law. In ruling on the summary judgment motion, the court will reach the merits of plaintiff's claims only if it first concludes that there are no material facts in dispute. In making that determination, the court is bound to "resolve all ambiguities and draw all reasonable inferences against the moving party," in this case defendant McGuigan. Schwabenbauer v. Board of Education, 667 F.2d 305, 313 (2d Cir.1981).

I.

A. Standing

To determine whether plaintiff has standing to maintain this action, it is first necessary to evaluate the nature and sufficiency of his interest in the subject matter of the litigation. Plaintiff must "allege some particularized injury that sets him apart from the man on the street." United States v. Richardson, 418 U.S. 166, 194, 94 S.Ct. 2940, 2955, 41 L.Ed.2d 678 (1974) (Powell, J., concurring); Buckley v. Valeo, 424 U.S. 1, 12, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976) (per curiam); see G. Gunther, Cases and Materials on Constitutional Law 1615 & n. 1 (1980); Fallon, Of Justiciability, Remedies, and Public Law Litigation: Notes on the Jurisprudence of Lyons, 59 N.Y.U.L.Rev. 1, 19 (1984) (plaintiff must initially demonstrate "personal interest standing").[8]
*408 The standing inquiry has several components. First, there must be a case or controversy, the "irreducible minimum" required by Article III. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-472, 102 S.Ct. 752, 757-758, 70 L.Ed.2d 700 (1982). This requires plaintiff to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); Linda R.S. v. Richard D., 410 U.S. 614, 617-618, 93 S.Ct. 1146, 1148-1149, 35 L.Ed.2d 536 (1973). The requirement that plaintiff allege a specific and concrete injury is designed to ensure that issues are framed in a factual context suitable for judicial resolution. Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968); see Secretary of State of Maryland v. Joseph H. Munson Co., ___ U.S. ___, ___, 104 S.Ct. 2839, 2845, 81 L.Ed.2d 786 (1984); Singleton v. Wulff, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (Blackmun, J.); see also Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) (standing requirements are directed at "assur[ing] that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends"). Allegations of subjective "chill" inhibiting the exercise of constitutional rights "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 12-14, 92 S.Ct. 2318, 2325-2326, 33 L.Ed.2d 154 (1972).
Second, plaintiff must show that the injury alleged is fairly traceable to the challenged action. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). Recent decisions of the Supreme Court indicate that the requisite causal connection includes a showing that plaintiff's injury "is likely to be redressed by a favorable decision." Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); see City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983); Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 74-75 & n. 20, 98 S.Ct. 2620, 2630-2632 & n. 20, 57 L.Ed.2d 595 (1978).
In addition to these constitutional requirements, the Supreme Court has recognized certain prudential restrictions on standing. As a general rule, a plaintiff "must assert his own legal rights and interests, and cannot rest his claims for relief on the rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); see Valley Forge Christian College, supra, 454 U.S. at 474, 102 S.Ct. at 759; Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). Furthermore, a plaintiff cannot raise "abstract questions of wide public significance" which are essentially generalized grievances shared by the public at large. Warth v. Seldin, supra, 422 U.S. at 498-500, 95 S.Ct. at 2204-2206; Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 221-227, 94 S.Ct. 2925, 2932-2935, 41 L.Ed.2d 706 (1974); United States v. Richardson, supra, 418 U.S. at 176-180, 94 S.Ct. at 2946-2948. A plaintiff must also demonstrate a connection between the injury he alleges and some source of law which arguably justifies a lawsuit. Flast v. Cohen, supra, 392 U.S. at 102, 88 S.Ct. at 1953 (1968); see *409 Fallon, supra, 59 N.Y.U.L.Rev. at 20. In other words, in order to comply with the so-called "nexus" test of standing, a plaintiff must show that he falls "within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Valley Forge Christian College, supra, 454 U.S. at 475, 102 S.Ct. at 760. But see Doe v. Blum, 729 F.2d 186, 189 n. 3 (2d Cir.1984) (Newman, J.) (noting questions concerning continued vitality of "zone of interest" requirement in view of recent Supreme Court decisions).
It is clear that plaintiff Wilkinson is directly affected, in the capacity in which he raises his claims, by the practice he challenges. See Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 209-210, 93 S.Ct. 364, 366-367, 34 L.Ed.2d 415 (1972). He is the Imperial Wizard of the Klan, regularly attends Klan rallies held in Connecticut and alleges that he has been stopped and searched at such rallies on numerous occasions. See Affidavit of Bill Wilkinson (filed May 16, 1984) ¶ 7 ("Wilkinson Affidavit"). Whatever else one might say of plaintiff's wide-ranging activities, he is not simply an interested bystander roving about in search of unconstitutional state actions. See United States v. SCRAP, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973).
Plaintiff alleges "specific" and "concrete" injuries resulting from the challenged practice of stopping and searching all persons in attendance at Klan rallies in Connecticut. See Laird v. Tatum, supra, 408 U.S. at 12-14, 92 S.Ct. at 2325-2326; Baker v. Carr, supra, 369 U.S. at 204, 82 S.Ct. at 703. He contends that the offensive and humiliating nature of the stops and searches inhibits persons from attending Klan rallies, thereby impeding the organization's ability to recruit new members and to associate with those of similar views in order to increase its voice in the political process. Plaintiff's Exhibit O ¶¶ 11-12, 15-16. In plaintiff's view, these asserted injuries to his constitutional rights were the direct consequence of defendants' actions in obtaining state court injunctions authorizing stops and searches to enforce weapons bans at Klan rallies. See Fallon, supra, 59 N.Y.U.L.Rev. at 17 n. 91 (causation requirement of standing replicates tort law concept of "but for" causation), citing Simon v. Eastern Kentucky Welfare Rights Organization, supra, 426 U.S. at 45, 96 S.Ct. at 1927.
Plaintiff has also made the requisite showing of remedial efficacy. Declaratory and injunctive relief prohibiting stops and searches at political rallies in the absence of individualized suspicion would remedy the purported threat to plaintiff's constitutional rights which is "real and immediate," not merely "conjectural" or "hypothetical." See City of Los Angeles v. Lyons, supra, 103 S.Ct. at 1665; O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). Plaintiff's position as Imperial Wizard of the Klan, together with the recurrence of stops and searches at recent Klan rallies held in Connecticut, see Compliance with Order, supra, ensures that plaintiff is "realistically threatened by repetition of his experience." City of Los Angeles v. Lyons, supra, 103 S.Ct. at 1668-1669.
In addition, prudential standing restrictions do not prevent plaintiff from maintaining this action. Plaintiff is not attempting to vindicate the rights of third parties; he claims that he himself has been stopped and searched at numerous Klan rallies in Connecticut. Nor is plaintiff pressing "a mere abstract concern about a problem of general interest." Village of Arlington Heights, supra, 429 U.S. at 263, 97 S.Ct. at 562. This is not a case in which a person with no direct stake in the outcome is attempting to convert the federal courts "into judicial versions of college debating forums." Valley Forge Christian College, supra, 454 U.S. at 473, 102 S.Ct. at 759; see Sierra Club v. Morton, 405 U.S. 727, 739-740, 92 S.Ct. 1361, 1368-1369, 31 L.Ed.2d 636 (1972).
Finally, there is the requisite nexus between plaintiff's status as Imperial Wizard *410 of the Klan and his challenge to the practice of stops and searches in the absence of individualized suspicion at Klan rallies. His efforts to recruit new members for the Klan and to associate with like-minded persons to increase the political influence of the Klan are within the "zone of interests" protected by First Amendment guarantees of freedom of speech, assembly and association. His desire to attend Klan rallies free from assertedly unreasonable searches and seizures is within the "zone of interests" protected by the Fourth Amendment. And his challenge to the methods employed in obtaining court orders authorizing the challenged practice is within the "zone of interests" protected by the due process clause of the Fourteenth Amendment.
Accordingly, for all of the foregoing reasons, the court concludes that plaintiff has standing to maintain this action.

B. Mootness

Plaintiff's lawsuit is moot only if the passage of time has caused it completely to lose "its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969); see Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1182, 71 L.Ed.2d 353 (1982) (per curiam); United States Parole Commission v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).
Defendant McGuigan contends that all court orders authorizing stops and searches at Klan rallies have expired and that similar orders are unlikely to be issued in the future. He thus claims that the case is moot. However, a case
does not become moot merely because the conduct immediately complained of has terminated, if there is a possibility of a recurrence that would be within the terms of a proper decree.
P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's Federal Courts and the Federal System 110-111 (2d ed. 1973), citing United States v. Trans-Missouri Freight Association, 166 U.S. 290, 308-310, 17 S.Ct. 540, 546-547, 41 L.Ed. 1007 (1897); Allee v. Medrano, 416 U.S. 802, 810, 94 S.Ct. 2191, 2197, 40 L.Ed.2d 566 (1974) ("[i]t is settled that an action for an injunction does not become moot ... if there is a possibility of recurrence"). The burden is on the defendant to establish that "there is no reasonable likelihood that the wrong will be repeated." Iron Arrow Honor Society v. Heckler, ___ U.S. ___, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983), quoting United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Otherwise, a defendant "would be free to `return to his old ways' after the threat of a lawsuit had passed." Id.; see also Vitek v. Jones, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980).[9]
Plaintiff has stated his intention to attend future Klan rallies held in Connecticut. See Wilkinson Affidavit ¶ 8. Moreover, all persons attending the four Klan rallies held in the state on April 28-29, 1984 were stopped and searched. Id. ¶ 4; see Klan Members Complain About Weapons Searches, Hartford Courant, Apr. 30, 1984, at A3, col. 1. Because plaintiff confronts the prospect of being stopped and searched at future Klan rallies, the constitutionality of the challenged practice remains a live controversy. Accordingly, the case cannot properly be deemed moot.

C. Ripeness

Problems of ripeness arise from the ban on advisory opinions contained in *411 Article III of the Constitution. See United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947); G. Gunther, supra, at 1655-1656. A case is not ripe for decision unless it raises more than a generalized, speculative fear of illegal or unconstitutional action. See Laird v. Tatum, supra, 408 U.S. at 12-14, 92 S.Ct. at 2325-2326. A plaintiff must establish that he faces a credible threat of future harm. Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983); Ellis v. Dyson, 421 U.S. 426, 434-435, 95 S.Ct. 1691, 1695-1696, 44 L.Ed.2d 274 (1975). It is not necessary, however, to wait until an actual injury is sustained before bringing suit. Babbitt v. United Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); see Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 581-583, 100 S.Ct. 800, 806-807, 63 L.Ed.2d 36 (1980); cf. Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923) ("[i]f the injury is certainly impending, that is enough").
Like standing, ripeness also involves prudential limitations. See Poe v. Ullman, 367 U.S. 497, 508-509, 81 S.Ct. 1752, 1758-1759, 6 L.Ed.2d 989 (1961). The court must consider the benefits to be gained from delaying resolution of the controversy until a time closer to the actual occurrence of the event at issue in order to permit the development of a more complete factual record. Regional Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974); see Rescue Army v. Municipal Court of Los Angeles, 331 U.S. 549, 576, 67 S.Ct. 1409, 1423, 91 L.Ed. 1666 (1947); G. Gunther, supra, at 1663. The court must also consider any possible hardships imposed on the parties by withholding judicial relief. Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); see Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 156, 71 S.Ct. 624, 640, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).
Defendant McGuigan contends that this case is not ripe for adjudication because the harm asserted by plaintiff is merely speculative. In McGuigan's view, there is no credible threat that plaintiff will again be stopped and searched while attending a Klan rally in Connecticut because recurrence of the challenged practice is dependent upon multiple contingencies. Memorandum of Law in Support of Motion to Dismiss (filed Oct. 26, 1983) at 6-8 ("Defendants' Memorandum"). First, the Klan must hold another rally in Connecticut; second, it must appear that counter-demonstrators will be present at that rally; and third, defendants must seek an injunction in the Superior Court permitting them to stop and search all persons in attendance at the rally. Such contingencies, however, do not take plaintiff's claims into the realm of "speculation and conjecture." O'Shea v. Littleton, supra, 414 U.S. at 497, 94 S.Ct. at 676; see Rizzo v. Goode, 423 U.S. 362, 372-373, 96 S.Ct. 598, 604-605, 46 L.Ed.2d 561 (1976). The pattern established by the fifteen Klan rallies in Connecticut since September 1980 demonstrates that recurrence of stops and searches in the absence of individualized suspicion at future Klan rallies is a distinct possibility. See Klan Members Complain About Weapons Searches, supra.
The Klan held rallies in Connecticut as recently as April 28-29 of this year, and there is reason to believe that the organization will sponsor additional rallies in the state. See Wilkinson Affidavit ¶ 8. Counter-demonstrators have appeared at all but one of the Klan rallies held in Connecticut since 1980, see Plaintiff's Exhibit D, and the Connecticut State Police recognized in an intelligence report prepared in anticipation of the Windham rally, held October 10-11, 1981, that certain anti-Klan groups, such as the International Committee Against Racism, have "a documented history of confronting the Klan at almost all their rallies throughout the United States," Plaintiff's Exhibit M at 2-3. Finally, the Connecticut State Police regard the challenged practice of stops and searches as necessary to prevent violence at any Klan *412 rally held on public property. See Deposition of Wilfred Blanchette (dated June 13, 1983) at 24-25.
Defendant McGuigan also argues that the case is not ripe for decision because the constitutionality of the challenged practice must be evaluated on a case-by-case basis and thus "[u]ntil a particular Klan rally is announced, the potential for violence cannot accurately be determined." Defendants' Memorandum at 14. This argument is unpersuasive. The fifteen Klan rallies held in the state over the last four years (including four rallies held in 1984 after defendant McGuigan filed his motion to dismiss) provide a sufficient factual basis for adjudicating plaintiff's constitutional claims. See 4 K. Davis, Administrative Law Treatise § 25.11 (1983). This is not a case where "the shape in which the underlying constitutional issues have reached th[e] [c]ourt presents ... insuperable obstacles to any exercise of jurisdiction to determine them." Rescue Army v. Municipal Court of Los Angeles, supra, 331 U.S. at 574, 67 S.Ct. at 1422.
Finally, defendant McGuigan suggests that plaintiff will suffer no hardship if this action is dismissed, because he will have an opportunity to present his constitutional objections in state court should defendants again seek authorization to stop and search all persons attending a Klan rally in Connecticut. Defendant's Memorandum at 16-17. Plaintiff cannot be relegated to raising his claims at an expedited preliminary injunction hearing held on short notice a few days prior to a scheduled rally. See Plaintiff's Memorandum at 32-34.[10] Although it is true that state courts are obligated to uphold federal constitutional rights, see Steffel v. Thompson, 415 U.S. 452, 460-461, 94 S.Ct. 1209, 1216-1217, 39 L.Ed.2d 505 (1974), forcing plaintiff to litigate complex First, Fourth and Fourteenth Amendment issues under severe time constraints, without the benefit of discovery, predictably would result in a consideration "too hasty to afford [adequate] protection of rights." Regional Rail Reorganization Act Cases, supra, 419 U.S. at 145, 95 S.Ct. at 359.
Accordingly, the court concludes that plaintiff's case is ripe for adjudication.

II.
Defendant McGuigan maintains that there are no disputed issues of material fact with respect to plaintiff's claim that stopping and searching all persons in attendance at a political rally in the absence of individualized suspicion is unconstitutional under every conceivable set of circumstances. He thus contends that the case is appropriate for summary judgment.[11] One example will suffice to show *413 that the burden of demonstrating the absence of disputed material issues of fact has not been met.
Plaintiff, among other things, alleges that the challenged practice "poses a substantial impediment to the effective exercise of rights of free speech, assembly and association." Plaintiff's Memorandum at 9; see generally N.A.A.C.P. v. Alabama, 357 U.S. 449, 462-463, 78 S.Ct. 1163, 1171-1172, 2 L.Ed.2d 1488 (1958). To determine whether stopping and searching participants at a political rally in the absence of individualized suspicion is constitutional, the court must decide whether the challenged practice constitutes a reasonable time, place and manner restriction on the exercise of First Amendment rights. See Grayned v. City of Rockford, 408 U.S. 104, 115 & n. 30, 92 S.Ct. 2294, 2303 & n. 30, 33 L.Ed.2d 222 (1972); see also Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976) (restrictions on First Amendment rights are valid "provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in doing so they leave open ample alternative channels of communication"). The reasonableness of the restriction depends, in part, on whether the practice is narrowly tailored to advance a legitimate governmental interest. See, e.g., United States v. Grace, 461 U.S. 171, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983); Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647-648, 654, 101 S.Ct. 2559, 2563-2564, 2567, 69 L.Ed.2d 298 (1981). The burden of proof on this issue rests with the defendant. See Schad v. Borough of Mount Ephraim, 452 U.S. 61, 69-71, 101 S.Ct. 2176, 2183-2184, 68 L.Ed.2d 671 (1981); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969).
One of plaintiff's proposed witnesses, a former official of the District of Columbia police department, has stated that, in his experience, stops and searches in the absence of individualized suspicion were never deemed necessary to maintain order at demonstrations and marches in Washington, D.C. See Affidavit of Robert Klotz (filed Dec. 12, 1983) ¶¶ 10-14. In his opinion, violence at Klan rallies in Connecticut could be prevented without resorting to such a practice. Id. ¶ 17; see Plaintiff's Memorandum at 11. Defendant, on the other hand, asserts that the challenged practice is necessary to maintain order at Klan rallies because of the threat of violence posed by anti-Klan demonstrators. See, e.g., Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment (filed Dec. 27, 1983) at 7. The existence of means to prevent violence at Klan rallies short of stopping and searching all persons in attendance is thus a disputed issue of fact material to plaintiff's First Amendment claims. This is but one example of disputed factual issues that render this case unsuitable for summary judgment.

Conclusion
For the reasons stated above, defendant McGuigan's motion to dismiss and motion *414 for summary judgment are hereby denied in all respects. A final pretrial order in the form prescribed by the court shall be filed jointly by all parties on or before August 13, 1984. See Amended Pre-Trial Scheduling Order (filed Nov. 4, 1983) ¶ 3. A trial of this action shall be scheduled for as soon as possible thereafter.
It is so ordered.
NOTES
[*] Plaintiff's first counsel withdrew his appearance due to illness, after repeated failures to comply with deadlines established by the court. The efforts of plaintiff, and others allied in interest with him, to secure substitute counsel either in Connecticut or elsewhere met with no success, despite the forbearance of defendants' counsel. In an effort to facilitate representation of a party whose complaint raised substantial constitutional questions, the court in July 1982 requested that Professor Robert Bard of the University of Connecticut School of Law and Professor Matthew Horowitz of that institution's Civil Litigation Clinic serve as plaintiff's counsel on a pro bono publico basis. See Certified Official Transcript of Hearing Held October 12, 1982 (filed Oct. 15, 1982) at 9-10. Professors Bard and Horowitz agreed to take the case as volunteer lawyers for the Connecticut Civil Liberties Union, see Affidavit of Burt Neuborne (dated June 15, 1983) ¶ 6 in Wilkinson v. Kelly, Civil No. H 83-508 (D.Conn.), without regard to their personal views concerning the activities of plaintiff or the Ku Klux Klan. After some initial involvement in the case, Professor Bard effectively withdrew his appearance.

On May 25, 1983, a suit was filed against Professor Horowitz in the Connecticut Superior Court, alleging that his representation of plaintiff in this action violated Conn.Gen.Stat. § 46a-71(b), which proscribes the use of "state facilities" to further or sanction racial discrimination. The plaintiffs in that action, black and Jewish citizens of the State of Connecticut, sought, among other things, an injunction barring Profesor Horowitz from using his office, clerical staff, or supplies at the law school in the prosecution of plaintiff Wilkinson's lawsuit. On June 14, 1983, the action was removed to this court, pursuant to 28 U.S.C. § 1442(a)(3). Kelly v. Horowitz, Civil No. H 83-512 (D.Conn.). The case was later remanded to the Superior Court, see Certified Official Transcript of Hearing Held August 22, 1982 (filed Aug. 30, 1983) at 7, and dismissed on the grounds that the plaintiffs lacked standing to maintain it. See Memorandum of Decision, Kelly v. Horowitz, No. 284052 (Conn.Super.Ct. Feb. 17, 1984).
[1] As Imperial Wizard, plaintiff is the "chief executive officer" of the Klan. Affidavit of Bill Wilkinson (filed Dec. 12, 1983) ¶ 3.
[2] The posture of this case is ironic in view of the fact that 42 U.S.C. § 1983, a provision of the Ku Klux Klan Act of April 20, 1871, was drafted in large measure to control the excesses of namesake predecessor organizations and other similar groups. Monroe v. Pape, 365 U.S. 167, 172-178, 81 S.Ct. 473, 476-479, 5 L.Ed.2d 492 (1961) (Douglas, J.) ("one main scourge of the evil  perhaps the leading one  was the Ku Klux Klan"); see, e.g., Cong.Globe, 42d Cong., 1st Sess. 154-158 (1871) (remarks of Sen. Sherman); id. at 320-322 (remarks of Rep. Stoughton); see also Developments in the Law  Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1153-1155 & nn. 104-106, 108, 112, 114 (1977).
[3] The order entered prior to the Scotland rally enjoined the possession of a "firearm or other weapon" in the town on the dates of the scheduled Klan rally but did not authorize any specific means of enforcing the injunction. Defendant's Exhibit 4.
[4] On the day before the rally, a temporary restraining order was issued by Judge Warren W. Eginton of this court, requiring the City of Meriden to reinstate a permit it had issued to the Klan to conduct its demonstration and had later revoked. See Temporary Restraining Order, Invisible Empire Knights of the Ku Klux Klan v. City of Meriden, Civil No. N 82-130 (D.Conn. Mar. 19, 1982).
[5] An order similar to those issued prior to other rallies was sought in connection with the Canterbury rally but the application was denied by the Superior Court. See Answers of Defendant Austin J. McGuigan to Plaintiff's Requests for Admissions (filed July 27, 1984) ¶ 134; Plaintiff's Memorandum at 2.
[6] In addition to an order of the Superior Court authorizing stops and searches to enforce a weapons ban, Judge Ellen Bree Burns of this court issued a temporary restraining order prohibiting the City of West Haven from requiring the Klan to pay fees, acquire insurance or post a bond, or from otherwise obstructing the issuance of a permit for the April 28, 1984 rally. The order also prohibited the city from interfering with the Klan's distribution of leaflets during the rally. See Temporary Restraining Order, Invisible Empire Knights of the Ku Klux Klan v. City of West Haven, Civil No. N 84-259 (D.Conn. Apr. 23, 1984).
[7] The other defendants did not formally join in defendant McGuigan's motions. Nevertheless, if the court determines that plaintiff is without standing or that the case is not justiciable, it would be necessary to dismiss the action as to all defendants. Similarly, if there are no disputed issues of material fact and defendant McGuigan is entitled to judgment as a matter of law, that would also end the lawsuit as a practical matter because plaintiff's claims against all defendants stem from the same challenged practice.
[8] It has been noted that the standing inquiry bears a "close affinity to questions of ripeness  whether the harm asserted has matured sufficiently to warrant judicial intervention  and that of mootness  whether the occasion for judicial intervention persists." Warth v. Seldin, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975). Nevertheless, standing cannot simply be collapsed into other aspects of justiciability. But see International Society for Krishna Consciousness v. Eaves, 601 F.2d 809, 817-819 (5th Cir.1979) (blurring distinction between standing, ripeness and mootness doctrines). Standing focuses on whether the plaintiff is a "proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." Flast v. Cohen, 392 U.S. 83, 99-100, 88 S.Ct. 1942, 1952-1953, 20 L.Ed.2d 947 (1968).
[9] The so-called "capable of repetition, yet evading review" exception to the mootness doctrine, see generally Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 602-603, 102 S.Ct. 2613, 2618-2619, 73 L.Ed.2d 248 (1982), is arguably distinct from the principle that a case is not moot if there is a reasonable expectation that the challenged practice will recur. See, e.g., Vitek v. Jones, supra, 445 U.S. at 503, 100 S.Ct. at 1269 (Blackmun, J., dissenting) (suggesting a distinction between "capable of repetition, yet evading review" cases and "voluntary cessation" cases).
[10] With respect to the nine Klan rallies held in Connecticut prior to 1984 for which court orders permitting stops and searches were sought, the following table indicates the number of days prior to each rally that (1) law enforcement officials received notice of the intention to hold the rally; (2) a lawsuit seeking a ban on the possession of weapons was filed; (3) an evidentiary hearing was held; and (4) an injunction was issued.

 Rally Notice Suit Hearing Order
 Scotland 20 1 1 1
 Windham 28 3 2 1
 Meriden III 119 12 1 1
 Danbury 50 4 1 1
 Norwich 7 1 1 1
 Canterbury 6 3 2 -
 Meriden IV 242 2 2 1
 New Britain 37 11 4 4
 Stratford 42 10 4 3

Plaintiff's Memorandum at 32.
[11] The prerequisites for granting summary judgment are well-established. See Schwabenbauer v. Board of Education, 667 F.2d 305, 313 (2d Cir.1981). There can be no "genuine issue as to any material fact" and the moving party must be "entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. "The burden is on the moving party `to demonstrate the absence of any material factual issue genuinely in dispute.'" American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir.1981), quoting Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1319-1320 (2d Cir.1975); Schering Corp. v. Home Insurance Co., 712 F.2d 4, 9 (2d Cir.1983). Moreover, there can be no controversy as to the inferences to be drawn from the facts in evidence. Schwabenbauer, supra, 667 F.2d at 313; see Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co., 381 F.2d 245, 249 (4th Cir. 1967). In determining whether or not there is a genuine issue of material fact, the court must "resolve all ambiguities and draw all reasonable inferences against the moving party." Schwabenbauer, supra, 667 F.2d at 313; see United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir.1983); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980). Summary judgment is not favored in cases involving constitutional questions, which often require the full factual development provided by a trial. See Doe v. United States Civil Service Commission, 483 F.Supp. 539, 555 (S.D.N.Y. 1980).