**Bill WILKINSON and James Farrands**

**v.**

**Lester FORST, Commissioner of Public Safety for the State of Connecticut at certain times relevant hereto, individually and in his official capacity; Donald Long, Commissioner of Public Safety for the State of Connecticut at certain times relevant hereto, individually and in his official capacity; Austin McGuigan, Chief State's Attorney for the State of Connecticut at all times relevant hereto, in his official capacity; and the City of Meriden.**

**Civ. No. H-80-755 (JAC).**

United States District Court,
D. Connecticut,

Feb. 8, 1990.

Philip D. Tegeler, Martha Stone, Connecticut Civil Liberties Union, and Matthew Horowitz, Blume & Elbaum, Hartford, Conn., for plaintiffs.

Steven R. Strom, Asst. Atty. Gen., Hartford, Conn., for defendants.

RULING ON MOTION FOR
ATTORNEYS' FEES

JOSÉ A. CABRANES, District Judge:

This action was brought in 1980 against officials of the Connecticut State Police Department and a local police department, challenging defendants' practice of searches of those attending Ku Klux Klan rallies. On June 30, 1986, this court held that weapons searches at such rallies violated Klan members' Fourth Amendment rights, and the court enjoined state police from conducting such searches in the absence of individualized suspicion or probable cause. *Wilkinson v. Forst*, 639 F.Supp. 518 (D.Conn.1986). *See also Wilkinson v. Forst*, 591 F.Supp. 403 (D.Conn. 1984) (denying defendants' motions to dismiss and for summary judgment). The court later denied a post-judgment application by defendants to permit use of magnetometer searches for weapons at Klan rallies. *Wilkinson v. Forst*, 656 F.Supp. 710 (D.Conn.1986). On appeal, the Court of Appeals affirmed the injunction against patdown and automobile searches without reasonable suspicion or probable cause, but reversed and remanded the order regarding magnetometer searches with a direction to modify the injunction to allow general magnetometer searches without regard to standards of reasonable suspicion or probable cause. *Wilkinson v. Forst*, 832 F.2d 1330 (2d Cir.1987), *cert. denied*, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 907 (1988). Plaintiffs thus prevailed substantially in all of the claims they initially asserted.

On remand, I held that no federal court prior authorization for magnetometer searches was required; that portal, not handheld, magnetometers should be used in the first instance in all reasonably foreseeable circumstances; and that defendants would not be ordered to purchase special or particular equipment and participate in training proposed by defendants. *See Wilkinson v. Forst*, 717 F.Supp. 49 (D.Conn. 1989). On September 5, 1989, plaintiffs applied for an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988. Defendants have opposed this application on a number of grounds.

## DISCUSSION

### A.

The starting point for determination of reasonable attorneys' fees is the "lodestar" figure. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*"Delaware Valley"*). The lodestar figure is calculated "by multiplying the reasonable number of hours expended times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The Supreme Court has held that the lodestar figure should be accorded presumptive weight, *Delaware Valley*, 478 U.S. at 565, 106 S.Ct. at 3098, and is to be modified "only in certain 'rare' and 'exceptional' cases." *Id.* (citing *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549).

Plaintiffs seek an award of fees in the amount of $315,230.85 for all work completed up to and including August 29, 1989 and $5,827.92 for all work after that date. They also move for costs in the amount of $11,205.85. The amount of $315,230.85 claimed for attorneys' fees prior to August 29, 1989 was calculated by beginning with a lodestar figure of $140,102.60, a figure arrived at by multiplying the time expended by the current market rates to compensate for delay in payment. The rates claimed are: $160/hr. for Martha Stone, $150/hr. for Matthew Horowitz, $150/hr. for Shelley White, $135/hr. for Shelley Geballe, $125/hr. for Philip Tegeler (each an attorney), and $15/hr. for Ken Lawrence (a law student intern). Plaintiffs also claim a 100% enhancement or "multiplier" for the contingent nature of the case, and an additional 25% enhancement for quality of representation and the results obtained.

### B.

Applying the standard of *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (party prevails "if they succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit"), the

court finds that plaintiffs have prevailed in the overall litigation. *See also Texas State Teachers Assoc. v. Garland Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). A reduction in the fee is not justified merely because "prevailing plaintiff did not receive all the relief requested." *Hensley v. Eckerhart*, 461 U.S. at 435–436 n. 11, 103 S.Ct. at 1941 n. 11. In the instant case, plaintiffs obtained all the relief they originally sought. They did not receive the relief requested only with respect to the issue of magnetometer searches at Klan rallies, an issue raised by defendants *after* the ruling of the court in favor of plaintiffs (a ruling subsequently affirmed by the Court of Appeals). Indeed, the magnetometer issue was not even addressed in the court's original ruling; plaintiffs were fully successful with respect to the pat-down and automobile search issues that originally prompted the litigation. Even with respect to magnetometer searches, plaintiffs prevailed as to some, though far from all, issues regarding the appropriate procedures for conducting such searches. Thus, bearing in mind the Supreme Court's rejection of the mathematical approach of separating the arguably unsuccessful claims from successful ones, *id.*, the court finds that the total number of hours expended by plaintiffs' counsel are not unreasonable in relation to the success achieved.

### C.

Defendants nowhere challenge, and apparently concede, that the hours expended by counsel, except for those expended in connection with the fee application (an issue addressed below), are reasonable and that the rates claimed are reasonable current rates, *see* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Costs and Attorneys' Fees (filed Nov. 7, 1989) at 7, but argue that historic, not current, rates should be used for years prior to 1987. It is clear that "an appropriate adjustment for delay in payment— whether by the application of current rather than historic hourly rates or otherwise" is consistent with the goals of fee-shifting statutes. *See Missouri v. Jenkins, by Agyei*, —— U.S. ——, 109 S.Ct. 2463, 2471–72, 105 L.Ed.2d 229 (1989); *Chambless v. Masters, Mates, and Pilots Pension Plan*, 885 F.2d 1053, 1060 (2d Cir.1989). Nonetheless, "district courts retain latitude in determining how they will compensate prevailing attorneys for delay." *See Chambless v. Masters, Mates, and Pilots Pension Plan*, 885 F.2d at 1060 (post-*Missouri* case approving district court's award of historic rates for earlier phase of litigation where factor of delay had been considered by court in awarding "generous" historic rates). *See also New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1152–53 (2d Cir.1983) (Newman, J.) (approving use of historic rates for earlier phase of litigation).

■ Accordingly, the court finds that plaintiffs' counsel should be awarded fees at current rates for the work performed in the years 1986–1989, and historic rates for the years 1980–1985. For attorneys Horowitz, Stone and White, who were involved in that early phase of the litigation, $125/hr. is an appropriate, and arguably generous, rate for the first few years of litigation. *See, e.g., Hillburn v. Commissioner, Connecticut Department of Income Maintenance*, 683 F.Supp. 23, 27 (D.Conn.1987), *aff'd*, 847 F.2d 835 (2d Cir. 1988) ($90/hr. is reasonable rate for experienced attorney in years 1982–1984). The court is persuaded that such an award adequately takes into account the factor of delay.

### D.

■ Plaintiffs move for an enhancement award of 100% for contingency and an additional 25% for quality of representation and result obtained. It is, of course, only the "rare case" where an upward adjustment of the lodestar figure is justified. *See Blum v. Stenson*, 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). The court finds that this case presents the extraordinary combination of circumstances under which a multiplier is appropriate. In particular, the court is persuaded that the difficulties of attracting counsel, risk of nonpayment in view of the prospect of mul-

ti-year litigation, and the personal, professional, and financial risks incurred by counsel in view of the extreme unpopularity of their client justify a 25% upward adjustment in fees. *See, e.g., Lewis v. Coughlin,* 801 F.2d 570, 573–76 (2d Cir.1986) (upward adjustment appropriate for contingent litigation); *Fadhl v. City and County of San Francisco,* 859 F.2d 649, 651 (9th Cir.1988) (upward adjustment of 100% in view of difficulty of attracting counsel in case at bar); *McKenzie v. Kennickell,* 684 F.Supp. 1097, 1103 (D.D.C.1988), *aff'd,* 875 F.2d 330 (D.C.Cir.1989) (upward adjustment of 50% in view of difficulty of attracting counsel in case at bar); *Baird v. Bellotti,* 616 F.Supp. 6, 9 (D.Mass.1984) (upward adjustment of 30% for representation of highly unpopular client). *See also* Affidavits by Attorneys Joseph D. Garrison, Michael P. Koskoff, Paul W. Orth, and David N. Rosen in Support of Plaintiffs' Motion for Costs and Attorneys' Fees (filed Oct. 16, 1989) (greater fees for cases taken on contingency basis are typical in Connecticut legal market; plaintiff would have substantial, if not insurmountable, difficulties finding attorney in Connecticut to undertake representation without adjustment for risk of non-payment and personal and financial risk due to unpopularity of client).

The matter of the difficulty of attracting counsel deserves a brief comment. At the outset of this litigation, the Klan was represented by one Norman Whitney, an attorney whose disabilities and subsequent suspension from the Connecticut Bar required him to withdraw as plaintiffs' counsel. Efforts to secure counsel for these highly unpopular plaintiffs—through the various bar associations, the court's list of volunteer counsel in criminal cases, the Connecticut Civil Liberties Union, *etc.*—proved utterly unavailing. Indeed, the Connecticut Civil Liberties Union, which eventually did appear on behalf of plaintiffs by providing Mr. Horowitz with an institutional base and, over time, support, originally declined the court's invitation to represent them. Only a subsequent conversation with a member of the faculty of the University of Connecticut Law School, Professor Robert Bard—in which I expressed my astonish-

ment that, after many weeks, I had been wholly unsuccessful in finding *any* Connecticut counsel who dared to represent these particular litigants even though they were asserting colorable constitutional claims—led to the appearance of Matthew Horowitz, then a lecturer and staff attorney at the civil litigation clinic of the University of Connecticut Law School. Professor Bard approached Mr. Horowitz, who considered my invitation and, in due course, accepted it, despite his personal repugnance for the various views expressed by plaintiffs at the very rallies that were the subject of this litigation. *See* Certified Official Transcript of Hearing of October 12, 1982 (filed Oct. 15, 1982) (describing how Professor Bard and Mr. Horowitz became involved); *Wilkinson v. Forst,* 591 F.Supp. at 405.

I well recall that for his willingness to serve the system for administration of justice in an apparently thankless enterprise, Mr. Horowitz was subjected to much public criticism and abuse. Indeed, on May 25, 1983 he was sued in the Superior Court of the State of Connecticut by citizens who took umbrage at the fact that a state university employee had dared to undertake this assignment from the federal court. *Id.* That lawsuit was apparently based on C.G.S.A. § 46a–71(b), which proscribes the use of state facilities to further or sanction racial discrimination. *See Kelly v. Horowitz,* No. 284052 (Conn. Superior Court). The state action against Mr. Horowitz was removed to this court on June 14, 1983, *see Kelly v. Horowitz,* Civil Action No. H–83–512 (D.Conn.), in an effort by Mr. Horowitz to seek the protection of this court against such unseemly harassment. After briefing and an extended hearing on the issue of the removability of that particular action from the state courts, it became my painful duty, on August 22, 1983, to remand the suit against Mr. Horowitz to the state courts for who-knows-how-much-more pain and suffering and cost. *See* Certified Official Transcript of Hearing held Aug. 22, 1983 (filed Aug. 30, 1983) in *Kelly v. Horowitz, supra; Wilkinson v. Forst,* 591 F.Supp. at 405. Professor Burt Neuborne of New

York University Law School, a student of constitutional law and then the General Counsel of the American Civil Liberties Union, capably (but, alas, unsuccessfully) represented Mr. Horowitz in the August 22, 1983 hearing on the motion to remand that vexatious lawsuit to the state courts. *Id.*

To Professor Bard, whose sense of professional obligation prompted an appeal to a colleague to represent extremely unpopular clients, and, of course, to Mr. Horowitz himself, the system for the administration of justice owes a debt of gratitude—one that I am pleased to be able publicly to acknowledge many years after they took on this difficult assignment.

Plaintiffs also request upward adjustment for quality of representation and results obtained. The court does not question the fact that plaintiffs' attorneys provided excellent representation for an unpopular client, but finds that the lodestar amount, adjusted upward by 25% in view of the factors discussed above, will provide the reasonable compensation for their efforts envisaged by 42 U.S.C. § 1988. *See, e.g., Lewis v. Coughlin,* 801 F.2d 570 (2d Cir.1986); *Fadhl v. City and County of San Francisco,* 859 F.2d 649 (9th Cir.1988); *McKenzie v. Kennickell,* 684 F.Supp. 1097 (D.D.C.1988), *aff'd,* 875 F.2d 330 (D.C.Cir. 1989); *Baird v. Bellotti,* 616 F.Supp. 6 (D.Mass.1984).

### E.

■ Defendants urge this court to reconsider its holding in *Hillburn v. Commissioner, Connecticut Dept. of Income Maintenance,* 683 F.Supp. 23, 27 (D.Conn.1987), *aff'd,* 847 F.2d 835 (2d Cir.1988), that expert costs are recoverable under 42 U.S.C. § 1988. The Circuits that have explicitly addressed this issue are divided. Although our Court of Appeals has not expressly ruled on this question, it appears to be the general practice of the district courts in our Circuit to make such awards. Until either our Court of Appeals or the United States Supreme Court informs this court otherwise, it will adhere to its own analysis in *Hillburn* that such

awards are appropriate under 42 U.S.C. § 1988. Defendants also request the court to eliminate compensation for travel time, parking, photocopying, and telephone costs but they provide no legal or other support for this position, *see* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Costs and Attorneys' Fees (filed Nov. 7, 1989) at 19. Absent even a suggestion of a reason for this request, it must be denied.

### F.

■ Finally, the court must address plaintiffs' Supplementary Fee Request (filed Dec. 18, 1989), in the amount of $5,827.92 for fees and expenses associated with the attorneys' fees application and related memoranda and affidavits. *See New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983) (Newman, J.) (fees incurred in bringing motion for attorneys' fees are recoverable). Although the fee application and related disputes in this case were more complex than in most, the claimed 52 hours spent by plaintiffs' counsel on fee-related issues, after the filing of the application itself, appears excessive. Based upon a review of the submitted affidavits and other materials, I find that a more appropriate time commitment is 25 hours and 30 minutes by Mr. Tegeler (approximately 75% of time claimed) and 6 hours and 15 minutes by Ms. Rintoul (approximately 50% of time claimed).

### CONCLUSION

In the circumstances of this case and based upon a review of the full record before me, including all the briefs and affidavits filed by the parties, and for the reasons stated above, the award of fees and costs in this case is as follows:

Attorneys' Fees for the Period 1980–1985

| | | | | |
|---|---|---|---|---|
| Stone | 4.25 hrs | × $125/hr. | = | $ 531.25 |
| Horowitz | 355.75 hrs | × $125/hr. | = | $ 44,468.75 |
| travel hours | 13.50 hrs | × $ 62.5/hr. | = | $ 843.75 |
| White | 205.50 hrs | × $125/hr. | = | $ 25,687.50 |

Attorneys' Fees for the Period 1986–8/29/1989

| | | | | |
|---|---|---|---|---|
| Stone | 26.90 hrs | × $160/hr. | = | $ 4,304.00 |
| Horowitz | 57.60 hrs | × $150/hr. | = | $ 8,640.00 |
| White | 115.75 hrs | × $150/hr. | = | $ 17,362.50 |
| travel hours | 3.50 hrs | × $ 75/hr. | = | $ 262.50 |
| Geballe | 26.6 hrs | × $135/hr. | = | $ 3,591.00 |
| Tegeler | 151.18 hrs | × $125/hr. | = | $ 18,897.50 |

| Attorneys' Fees for the Period 1986–8/29/1989 | | | | | |
|---|---|---|---|---|---|
| travel hours | 6.7 hrs | × | $62.50/hr. | = $ | 416.25 |
| Lawrence | 3.00 hrs | × | $15/hr. | = $ | 45.00 |
| **Attorneys' Fees for the Period After 8/29/1989** | | | | | |
| Tegeler: | 25.50 hrs | × | $125/hr. | = $ | 3,187.50 |
| Rintoul: | 6.25 hrs | × | $ 80/hr. | = $ | 500.00 |
| Attorneys' Fees Total: | | | | | $128,737.50 |
| 25% Adjustment: | | | | | $ 32,184.37 |
| Costs: | | | | | $ 11,209.25 |
| TOTAL | | | | | $172,131.12 |

Accordingly, plaintiffs' application for costs and fees is granted in the amount of $172,131.12. This sum shall be paid by no later than March 15, 1990.

It is so ordered.