Alean LEWIS, Gail Broughton, Linda Brown, Estelle Grant, Gloria Smalls, Audrey Smith, Shahana Taylor, and Denise Williams, Plaintiffs,

Linda Brown, Audrey Smith, Shahana Taylor and Denise Williams, Plaintiffs-Appellees-Cross-Appellants,

v.

Thomas COUGHLIN, III, Sally B. Johnson, Margaret Daily, and Edward Sheehan, Defendants-Appellants-Cross-Appellees.

Nos. 734, 745, Dockets 85–2195, 85–2207.

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1986.

Decided Sept. 10, 1986.

Christopher Keith Hall, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., O. Peter Sherwood, Deputy Sol. Gen., Frederick K. Mehlman, Judith A. Gordon, Eugene Murphy, Asst. Attys. Gen., New York City, of counsel), for defendants-appellants-cross-appellees.

Dan J. Pochoda, Brooklyn, N.Y. (Wm. Mogulescu, of counsel), for plaintiffs-appellees-cross-appellants.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

The principal question presented on this appeal is whether the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982), permits a lodestar award to be adjusted upward solely to account for the contingent nature of an attorney's fee. Also before us is a cross-appeal that challenges the district court's refusal to provide compensation for time spent in preparing the fee application and its reduction of the hours for which counsel could collect fees.

This appeal addresses Congress' balanced plan that contemplates remuneration for counsel undertaking civil rights litigation sufficient to insure their continuing interest in such cases while not providing the civil rights bar with a windfall. It is true that for a lawyer representing an indigent client seeking to vindicate constitutional rights, victory is sweet. Yet if the cost of that success in terms of uncompensated time and effort is too severe the lawyer, like Pyrrhus, will suspect that enough other "winners" like that will ruin him.

## I FACTS

Appellants are Thomas A. Coughlin, III, the Commissioner of the New York State Department of Correctional Services, and other State officials connected with the Bayview Correctional Facility, a New York City prison for women, where the incidents giving rise to this appeal occurred. In 1981 and 1982 eight prisoners were subjected to involuntary urine testing which, according to an outside laboratory report, tested positive for marijuana. Appellees were charged with and found guilty after a disciplinary hearing of using a controlled substance. Each was segregated for 60 days in a Special Housing unit and suffered 90 days loss of "good time credit." Two filed a *pro se* civil rights action in the United States District Court for the Southern District of New York (Broderick, J.) in May, 1982. An answer was filed for appellants by the Attorney General of New York. With the assistance of Prisoners' Legal Services, appellees also sought an administrative reversal of their dispositions and release from segregation. Appellant Hernandez, Director of Special Housing, denied the administrative appeal. Three months

later in October 1982—after the 60 days segregation had been served—appellant Coughlin without explanation reversed Hernandez's disposition and expunged the disciplinary charges from the appellees' records.

Upon their release from Bayview four of the eight prisoners (appellees-cross-appellants Linda Brown, Audrey Smith, Shahana Taylor and Denise Williams) retained private attorney Dan J. Pochoda, Esq. to represent them. Because the other four (Grant, Small, Lewis and Broughton, who are not appellees on this appeal) were still incarcerated they were able to retain Prisoners' Legal Services of New York. After their release, these latter four prisoners also retained attorney Pochoda who filed a complaint on behalf of all eight plaintiffs, amending the original *pro se* complaint, in January 1983. It alleged that due process and statutory rights had been violated in the prison disciplinary hearing and sought a remedy pursuant to 42 U.S.C. § 1983 (1982) and New York State law. Appellees demanded only monetary damages, while the four non-appellee plaintiffs asked for equitable relief and class certification on behalf of all current and future prisoners at Bayview. The State answered, interposed affirmative defenses, noticed depositions, served interrogatories, and sought partial summary judgment. In August 1983 the State offered $35 per day to each appellee for every day spent in segregation. For Pochoda's four clients this resulted in a total settlement offer of $8,050 which was promptly accepted. Shortly after this, all aspects of the case including the claims of those non-appellees represented by Prisoners' Legal Services were settled. Following the conclusion of these cases in October 1983, appellees' attorney sought counsel fees. In an attempt to reach agreement on this issue attorney Pochoda provided the State with a breakdown summary of the 99 hours he allegedly spent on the case. This time sheet was taken, he states, from his contemporaneous records. A number of meetings on the subject of fees were held without success.

On March 21, 1985 appellees' counsel moved for attorney's fees pursuant to § 1988, seeking compensation for 118 hours, 19 of which were spent on the fee application. Mr. Pochoda's request for $200 per hour was supported by a lengthy biographical sketch of his background as an experienced prisoners' rights litigator. He also sought a 50 percent upward adjustment to the $23,600 claim—or a total of $35,400—as reasonable attorney's fees. The bonus request was based upon the undesirability of the case, appellees' difficulties in obtaining representation, and the fact that there was no guarantee of a fee when the case was accepted, *i.e.*, its contingent nature. Appellants opposed the application arguing that the 118 hours should be reduced on account of counsel's failure to support it with contemporaneous time records and that no compensation should be given for the hours spent preparing it.

The district court heard oral argument on May 17, 1985 and ruled from the bench. It awarded attorney Pochoda $18,960. From the 118 hours claimed, the district court disallowed the 19 hours attributable to preparation of the fee application since the contemporaneous time records were omitted from the "original application," which occasioned more work for "all concerned." Appellees' counsel was penalized an additional 20 hours to compensate the State for time spent opposing the fee application in its undocumented form and for its expense in making a preclusion motion based on counsel's failure to supply the contemporaneous time records. Thus, from the 118 hours claimed, 39 hours were subtracted leaving 79 hours of billable time to which the district court applied a rate of $160 per hour for a lodestar of $12,640. To this the court added a 50 percent upward adjustment of $6,320 for a total award of $18,960. The sole reason the district court gave for the upward adjustment was contingency.

In November 1985 appellants agreed to pay the lodestar of $12,640. They appeal only the 50 percent bonus asserting that the district court failed to provide a clear explanation for its award, and that it

abused its discretion by enhancing the fee. Appellees cross-appeal the denial of attorney's fees for time spent on the fee application and the 20–hour penalty. As the appeal hinges entirely on construction of § 1988, we examine it first.

## II LEGISLATIVE HISTORY AND THE SUPREME COURT'S VIEW OF § 1988

The Civil Rights Attorney's Fees Awards Act of 1976 provides in part: "In any action or proceeding to enforce a provision of sections … 1983 … of this title, … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The plain language of the statute sheds no light on how a "reasonable attorney's fee" is to be derived, much less on the subject of an upward adjustment. Thus, we look to the Act's legislative history where Congress made clear in broad outline:

> [T]hat the amount of fees awarded … be governed by the same standards which prevail in other types of equally complex Federal litigation…. The appropriate standards, see *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), are correctly applied in such cases as *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D.Cal.1974); and *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' *Davis, supra; Stanford Daily, supra*, at 684.

S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5913. Two of the cases cited with approval in the legislative history refer specifically to the contingent nature of counsel fees as a proper factor to consider in determining a reasonable fee. *See, e.g., Johnson*, 488 F.2d at 718 (one consideration in fixing a reasonable fee is "[w]hether the fee is fixed or contingent.") (emphasis deleted); *Stanford Daily*, 64 F.R.D. at 685–86 *aff'd*, 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) (lodestar increased by district court to account for the partly contingent nature of the fee).

Turning from the Act's history to its construction, we observe that the Supreme Court has recently spoken on § 1988 in two significant cases. In the first, *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), it noted that Congress' purpose in enacting this statute was to ensure that those persons with civil rights grievances had " 'effective access to the judicial process.' " *Id.* at 429, 103 S.Ct. at 1937 (quoting H.R.Rep. No. 94–1558, p. 1 (1976)). The Supreme Court in *Hensley*, primarily concerned with a prevailing party's attempt to collect attorney's fees for unsuccessful claims—a subject not relevant to the question before us—concluded that "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" usually provides a reasonable attorney's fee within the meaning of the statute. *Id.* at 433, 103 S.Ct. at 1939. This formulation, the Court continued, does not end the initial estimate of the value of legal services rendered, as "other considerations" may lead to an upward or downward adjustment. *Id.* at 434, 103 S.Ct. at 1940.

In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Court held that neither the complexity nor novelty of the issues presented justified an upward adjustment in the fee award because these hours are reflected in the number of billable hours. *Id.* at 1548–49. Justice Powell, who authored the Court's opinion, returned to the theme he had sounded as drafter of the majority opinion in *Hensley* and noted that the resulting product of reasonable hours times reasonable rate "is presumed to be the reasonable fee contemplated by § 1988," *id.* at 1548, and that it is "the rare case in which an upward adjust-

ment to the presumptively reasonable fee of rate times hours is appropriate." *Id.* at 1550 n. 18. Moreover, the Court found that upward adjustments based on quality of representation would normally be disfavored since that criterion should already be factored into the reasonable hourly rate. Only in a case where the quality of representation was "superior" in relation to the fee and the success "exceptional" would a bonus to the lodestar be appropriate. *Id.* at 1549. Whether the risk of not prevailing and consequently not recovering any attorney's fees justifies an upward adjustment was left unanswered. *Id.* at 1550 n. 17.[1]

█ A review of the statute, its legislative history and the just cited Supreme Court decisions persuades us that Congress envisioned that the risk of nonpayment in a given case may be a factor for a court to consider in making an upward adjustment to a lodestar figure. Further, such enhancement is not foreclosed either by *Hensley* or *Blum.*

### III  UPWARD ADJUSTMENT

#### A.  *Other Circuits*

Next, an examination of how other circuits have resolved the question of an upward adjustment based on contingency after *Blum* was decided reveals a split among them. In *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1392 (7th Cir.1984) (quoting *Bonner v. Coughlin,* 657 F.2d 931, 936 (7th Cir.1981)) the court noted that "the risk of losing 'alone does not justify the use of a multiplier.'" The Seventh Circuit concluded that even if contingency could ever be considered in enhancing a fee, a district court must examine the particular fee arrangement entered into between the attorney and his client, as well as the strength of the plaintiff's case. 750 F.2d at 1392–93. *McKinnon* stated that allowing a multiplier based solely on risk "compensates attorneys, indirectly but effectively, for bringing unsuccessful civil

rights suits, even though the attorney's fee statute is expressly limited to cases where the party seeking the fee prevails." *Id.* at 1392 (citation omitted).

In *Murray v. Weinberger,* 741 F.2d 1423, 1431, 1432 (D.C.Cir.1984), the District of Columbia Circuit held that contingency will not normally justify an upward adjustment, unless exceptional results are achieved within the meaning of *Blum.* The Eighth and Ninth Circuits take a somewhat broader view, but generally disfavor awarding a fee bonus based solely on contingency, absent exceptional results. *See LaDuke v. Nelson,* 762 F.2d 1318, 1333 (9th Cir.1985) (court, applying Equal Access to Justice Act, 28 U.S.C. § 2412 (1982), cites with approval district court's holding "that the *inordinate* risk of no fee award was sufficient to justify a multiplier," presumably referring to the significant risks of losing the litigation) (emphasis added); *Sierra Club v. Clark,* 755 F.2d 608, 620 (8th Cir. 1985) (multiplier allowed in a case brought under the Endangered Species Act, 16 U.S.C. § 1540(g)(4) (1982), due to the risks involved in the litigation, the public importance of the result, and the novelty and difficulty of the issues presented); *Craik v. Minnesota State Univ. Bd.,* 738 F.2d 348, 350 (8th Cir.1984) ("The risk here went beyond the normal contingent-fee situation.").

The First, Third and Eleventh Circuits have adopted a pro-fee-generating standard and permit an upward adjustment of the lodestar based solely on contingency. *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 613–14 (1st Cir.1985); *Delaware Valley Citizens' Council,* 762 F.2d at 282; *Jones v. Central Soya Co.,* 748 F.2d 586, 591 (11th Cir.1984) (Although the particular fee arrangement is carefully scrutinized, "a contingency fee arrangement may justify an increase in an award of attorney's fees.") The *Wildman* court held that compensating lawyers for the particular risks in a given case may be necessary to insure

---

1. This issue will be before the Court in the upcoming term when it rehears *Delaware Valley Citizens' Council,* 762 F.2d 272 (3rd Cir.), *cert.* *granted,* — U.S. —, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985).

a reasonable attorney's fee as provided for under § 1988. In deciding whether contingency justifies an award, a court must focus on the "actual risks" assumed by the attorney and "not the mere fact that the case was taken on a contingent basis." 771 F.2d at 613. A district court must also identify and make findings on the factors relevant to the actual risks that form the basis for the upward adjustment. *See id.* at 613–14.

## B. *This Circuit's View*

### 1. *General Considerations*

With the foregoing in mind, we undertake an analysis of an upward adjustment based on contingency. To begin, we recognize that the Supreme Court has given a literal construction to the statutory provision that only a *prevailing* party may be awarded reasonable attorney's fees. For example, in *Hensley*, it denied recovery for legal services rendered in connection with *unsuccessful* claims, holding that to grant plaintiff attorney's fees for claims other than those on which plaintiff had prevailed would constitute a windfall. 461 U.S. at 435, 103 S.Ct. at 1940.

In fact, as previously noted, using the risk created by contingency fee arrangements as the basis for enhancing fees has been questioned on the ground that this factors into a fee award the number of unsuccessful cases a civil rights lawyer has previously handled. Such an approach has the effect of compensating counsel for these "losers" and thus violates § 1988's mandate of awarding fees only for "winners". *See McKinnon*, 750 F.2d at 1392. Moreover, the more outrageous a plaintiff's claim, the higher the multiplier because of the attendant high probability of failure. Hence, some courts suggest that contingency be removed entirely from the factors analyzed when a fee enhancement is at issue and that emphasis be placed instead on the exceptional nature of the success. *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 28–29 (D.C.Cir.1984), *cert. denied*, 105 S.Ct. 3488–89, 87 L.Ed.2d 622 (1985).

■ This position is not completely without merit. With the 1983 amendment of Fed.R.Civ.P. 11, the factor of contingency plays a lesser role than it formerly did. Before an attorney brings an action in federal court today, he should, after reasonable inquiry, determine that, to the best of his knowledge, information and belief, the complaint is well-grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985); *Elliott v. Perez*, 751 F.2d 1472, 1480–82 (5th Cir. 1985). Thus, while the risk factor cannot be entirely eliminated, *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), a competent attorney will minimize its importance first by complying with the requirements of Rule 11. Moreover, to the extent that the attorney is gambling on receiving a section 1988 fee, he knows that if he succeeds in securing an award for his client he will receive a "reasonable attorney's fee" regardless of the size of that award. *City of Riverside v. Rivera*, —— U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

■ Contingency is but one of twelve factors which the Supreme Court has said should be considered in fixing a reasonable attorneys fee. *Id.* at ——, 106 S.Ct. at 2691–92. The test to be applied in determining the weight to be given this factor should be an objective one based on the likely response of the bar to the case's pre-trial merits, rather than on the judge's subjective opinion of the merits. *See Kerr v. Quinn*, 692 F.2d 875, 878 (2d Cir.1982).

■ In and of itself, contingency is not a sufficient basis for awarding a lodestar bonus. Rather, it is the evaluation of the odds against success that ultimately determines whether an enhancement is merited. We have consistently viewed the risk of loss on the legal issues as an important consideration in any award of attorneys' fees above an hourly rate. *See Beazer v. New York City Transit Auth.*, 558 F.2d 97, 100–01 (2d Cir.1977), *rev'd on other*

*grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974). For example, in *Wheatley v. Ford,* 679 F.2d 1037, 1040–41 (2d Cir.1982), a pre-*Blum* decision, we overturned an upward adjustment to the lodestar because the case was not complex and plaintiff had a strong likelihood of success on the merits. Complexity, of course, no longer justifies a bonus; nor does handling a strongly meritorious case on a contingent fee basis. Since the purpose of § 1988 is to make civil rights cases attractive to attorneys, an attorney's fee award should be only as large as necessary to attract competent counsel. Cases that appear strong on the merits afford attorneys the option of entering into an arrangement with the client at the outset that permits counsel to share a stated percentage of the final recovery. In such cases, attorneys will not have to look to § 1988 as the sole source of legal fees.

Consequently, nothing in our pre-*Blum* decisions suggests that contingency alone will justify a fee enhancement, though the contingent rather than the fixed nature of the fee arrangement is a relevant factor in deciding whether to adjust the fee upwards. Other circuits have taken a similar position. *Ramos v. Lamm,* 713 F.2d 546, 558 (10th Cir.1983) (litigation was considered as it reasonably should have appeared to the lawyers at the outset which indicated that since some success was fairly clear, a bonus for contingency was inappropriate); *Hall v. Borough of Roselle,* 747 F.2d 838, 843–44 (3d Cir.1984) (denial of multiplier upheld because at the outset plaintiff had a formidable case and the risk that counsel would not be compensated was slight).

■ Thus, we reverse and remand the 50 percent upward adjustment awarded here because there was no finding of a contingency fee arrangement, nor was there an evaluation of the unlikelihood of appellees' success at the time attorney Pochoda was retained. Although the risk of losing will not alone justify a bonus, a significant risk of not prevailing coupled with a contingent fee arrangement may be sufficient to merit the upward adjustment. Without the possibility of a fee enhancement in these situations, competent counsel might refuse to represent civil rights clients thereby denying them effective access to the courts.

### 2. *Necessity for Findings of Fact*

The district court must first examine the fee arrangement attorney Pochoda had with his clients. When before the district court, he claimed that he had accepted the case on a "totally contingent basis," which implies no sharing in a percentage of the settlement. On remand, the district court should determine what kind of fee arrangement was in fact entered into. If counsel is entitled to a percentage of the recovery under his retainer, then to the degree that counsel obtains § 1988 payment, that amount should be offset against his claim for services provided under the contingency fee arrangement. *Wheatley,* 679 F.2d at 1041. Moreover, when a lawyer is not entirely dependent on statutory remuneration and enters a contingent fee contract with a client, such an arrangement is a strong factor militating against a bonus award as the percentage arrangement in any such agreement takes into account the possibility of losing the case. *McKinnon,* 750 F.2d at 1392–93.

■ Second, the trial court must consider the probability of failure. The district court need not find the results achieved "exceptional" within the meaning of *Blum. Cf., Murray v. Weinberger,* 741 F.2d at 1431–32. While exceptional results by an attorney may justify a bonus, that criterion relates to the quality of the representation. Justifying a bonus on the basis of contingency and low likelihood of success does not require a finding that the quality of representation was exceptional. Conversely, one relevant factor bearing on high-risk is whether other counsel had declined to take the case because there was little or no prospect of earning a fee. *See Wildman,* 771 F.2d at 614. Finally, when the trial court adjusts the lodestar amount, it must give specific reasons. *DiFilippo v. Mori-*

*zio,* 759 F.2d 231, 234–35 (2d Cir.1985); *Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985); *Murray v. Weinberger,* 741 F.2d at 1430.

## IV CROSS-APPEAL

### A. *Contemporaneous Time Records*

Turning to the cross-appeal, appellees contend that the district court abused its discretion when it denied any recovery for time spent preparing the fee application. They argue that the hours spent in fee preparation may not be denied merely because contemporaneous time records are not included with the application. Appellees' counsel argues that he is required only to *maintain* those records, not to *produce* them with the original application.

In *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983), a case involving an attorney's failure to *maintain* contemporaneous time records, we stated flatly that any attorney "who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records." We held that *no* attorneys' fees could be collected if a fee application was not adequately documented after the date of the *Carey* opinion. But regardless of when the failure occurred, denial of fees for time spent preparing the fee application is always an appropriate and necessary penalty for omitting to include the time records. *Id.*

■ We recognize that other courts have held that affidavits summarizing time logs are acceptable, and that opposing counsel must move for their production if an inspection of contemporaneous time records is desired. *See Copeland v. Marshall,* 641 F.2d 880, 905 (D.C.Cir.1980) (en banc). But *Carey* places the burden of producing these records on the attorney submitting the fee request. *See* 711 F.2d at 1148, 1154. Beyond this, the records' importance is so critical in determining a reasonable fee as to make their production by the most efficient method possible a prerequisite.

Opposing counsel should not have to make a preclusion motion. Thus, the district court properly refused to award fees for time spent preparing the fee application.

### B. *Reduction in Claimed Time*

The district court also reduced counsel's time by 20 hours to "compensate the state for the time it spent in opposing the application as it was originally presented in its undocumented form, and for the expense of making a preclusion motion based on the failure to supply the records." Attorney Pochoda filed his application for fees on March 22, 1985. Until then he had no duty to give defendants his time records. Less than three weeks later—on April 8, 1985—defendants filed a notice pursuant to Fed. R.Civ.P. 34(a) to produce the records within *ten* days. Rule 34(b) gives a party at least 30 days to comply with a request to produce. Yet, *eight* days later, on April 16, defendants filed a preclusion motion under Fed.R.Civ.P. 37 seeking to compel compliance with their notice to produce. Attorney Pochoda claims that before receiving the preclusion motion he had already complied with the April 8 original request for the time records.

■ Although we hesitate to overturn a district court's exercise of discretion in setting a reasonable attorney's fee, the 20-hour reduction of billable hours under these circumstances was not justified. Appellants did not obtain a court order requiring production of these records in less than 30 days, pursuant to Rule 34. Defendants' notice clearly gave Pochoda at least 10 days to comply. Rule 37(a)(2) and (d) does not entitle a party to invoke its sanctions until Rule 34 has been violated. To compensate appellants for time spent preparing a premature preclusion motion, as the district court did, encourages unnecessary expense. Appellees' counsel should not be required to pay for appellants' unwillingness to wait the requisite time for the records to be produced. Had the preclusion motion not been made prematurely, we would be inclined to affirm the district court. But, because appellants' preclusion

motion jumped the gun so to speak, there should be no reduction of counsel fees on that account. The district court therefore should restore 20 hours to attorney Pochoda's total time record, bringing it from 79 to 99 hours.

## V  CONCLUSION

Accordingly, with respect to the 50 percent upward adjustment to the lodestar, the judgment appealed from is reversed and the matter remanded to the district court for more specific findings on the bonus question consistent with this opinion, which expresses no view on the propriety of awarding a bonus in this case. With respect to the cross-appeal, the order of the district court is affirmed as to the denial of time spent preparing the fee application and reversed as to the 20 hours deleted as a penalty from counsel's billable time.