Sandra ROSE, et al., Plaintiffs,

v.

Stephen B. HEINTZ, Commissioner of the
Department of Income Maintenance of
the State of Connecticut; Otis Bowen,
Secretary of the United States Depart-
ment of Health and Human Services,
Defendants.

No. H–82–555 (AHN).

United States District Court,
D. Connecticut.

Sept. 28, 1987.

Dennis J. O'Brien, Conn. Legal Services, Inc., Willimantic, Conn., Kathleen Eldergill, Beck and Eldergill, Manchester, Conn., for plaintiffs.

Edmund C. Walsh, Office of the Atty. Gen., Hartford, Conn., for defendants.

## ORDER

NEVAS, District Judge.

Absent objection and in accordance with an agreement between the parties (see letter to court dated September 4, 1987), the Magistrate's recommended ruling is approved. So ordered.

1. Plaintiffs' lead counsel represented at oral argument that he would not seek compensation for time spent on that presentation. The court relied on his representation in fashioning its award. For these reasons it denies his claim, filed July 28, 1987, for additional compensation of $3,060.00 for hours spent prosecuting the fee

## MAGISTRATE'S OPINION

THOMAS P. SMITH, United States Magistrate.

The court heard oral argument on the matter of attorney fees June 29, 1987. Counsel for plaintiffs seek compensation for work they did on the initial litigation in 1982, their 1985 petition for fees before the District Court, and their 1986 appeal to the Second Circuit of the District Court's denial of the petition.[1] They ask for $77,922.33; this figure includes a one-third enhancement of the "lodestar" figure for "exceptional success". Defendant Commissioner of the Department of Income Maintenance ("DIM") argues through its attorney that the fee requested is excessive, for a variety of reasons. After carefully considering counsels' thorough briefs, able oral argument, the documentary evidence, the court grants plaintiffs' petition as modified below.

DIM's objections to the fee request fall into several categories: (1) the proper calculation of the number of hours claimed, with regard to (a) hours arguably spent on their "unsuccessful" claims, (b) failure in 1982 to keep contemporaneous time records and the purported inadequacy of subsequent attempts to reconstruct those records, (c) duplication of effort caused by multi-attorney[2] representation, and (d) time spent travelling in connection with, as opposed to "working" on the lawsuit; (2) the appropriate hourly rate at which counsel ought to be compensated; and (3) the propriety of an "enhanced" award based on either (a) the degree of success achieved on the merits or (b) the amount of risk associated with undertaking to represent these particular plaintiffs in this sort of suit.

■] A plaintiff cannot hope to recover attorney fees pursuant to 42 U.S.C. § 1988 unless s/he is a "prevailing party". But this is not difficult: So long as s/he has

amount question. See Plaintiff's Third Substitute Petition For Attorney's Fees (Filing 62).

2. Connecticut Legal Services ("CLS") attorneys O'Brien (lead), Read, and Kostecki, and private attorney Katherine Eldergill worked on the case.

" 'succeed[ed] on any significant issue in litigation which achieve[d] some of the benefits [s/he] sought in bringing suit' ", *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted), s/he is entitled to some monetary award. The District Court begins its determination of h/er reasonable fee by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate". *Id.* This deceptively simple formula is complicated by the relationship between the results obtained and the award's reasonableness: Where, as here, a plaintiff "succeeds" on a portion but not all of h/er claims, the court must ask:

> did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?

*Id.* at 434, 103 S.Ct. at 1940. In the instant case, DIM contends that, because plaintiffs' challenge to the constitutionality of the new step-parent rules under the Aid To Families With Dependent Children ("AFDC") program was unsuccessful, they cannot be compensated for time spent working on those claims which involved that challenge. Reasons DIM: plaintiffs' First Amended Complaint contained ten separate counts, three of which challenged application of the step-parent rule to Medicaid, four of which challenged the AFDC stepparent rule itself, with the remainder involving both AFDC and Medicaid. Likewise, DIM concludes that, because Attorney Read spent July 20, 1982 and July 21, 1982 on the Medicaid claims, Attorney O'Brien necessarily spent July 19 and July 20 on the AFDC claims:

> Thus, at least 50% of the hours ... devoted ... to research and drafting of the complaint should be attributed to work on the unsuccessful claim.

DIM's "Response To Plaintiffs' Petition For Attorneys Fees", Filing 59 at 13.

The Supreme Court in *Hensley* cautioned against just such a mechanical, "mathematical approach [which] compar[es] the total number of issues in the case with those actual prevailed upon", noting that "such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 435 n. 11, 103 S.Ct. at 1940 n. 11.

Although plaintiffs' First Amended Complaint did contain ten counts, because those counts "involve[d] a common core of facts" and were "based on related legal theories", *id.* at 435, 103 S.Ct. at 1940, this count finds it impossible to winnow purportedly unsuccessful chaff from successful grain. In addition for purposes of the preliminary injunction, plaintiffs relied on two claims only: (1) the violation of their rights under the federal Medicaid statute, 42 U.S.C. § 1396a *et seq.* which occurred when DIM terminated Medicaid based on the cessation of AFDC benefits and (2) DIM's failure to comply with Connecticut's Uniform Administrative Procedure Act ("UAPA") in promulgating policy decisions which implemented the new AFDC "step-parent income" rules. Had DIM adhered to the UAPA's detailed procedure for putting the public on notice of the change in stepparent income rules, it would/could not have terminated so hastily plaintiffs' Medicaid benefits.

Plainly, the AFDC and Medicaid claims are so inextricably entwined that the court cannot divide the hours expended on a claim-by-claim basis." *Id.* Thus, it is proper for the court to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* The court finds that all hours spent on the original complaint and memorandum contributed to the overall relief plaintiffs enjoyed; therefore their attorneys must be compensated for the hours reasonably expended on *all* claims.

That said, the court moves on to DIM's assertion that it must penalize plaintiffs for their failure in 1982 to maintain contemporaneous time logs.

■ Not until June 15, 1983 did the Second Circuit declare "contemporaneous records" which "specify for each attorney, the date, the hours expended, and the nature of the work done" a "prerequisite for attorney's fees." *New York Association For Retarded Children, Inc. v. Carey,* 711

F.2d 1136, 1147–1148 (2d Cir.1983). The *Carey* court took pains to point out that the effect of its ruling was to be prospective only, noting well how inequitable would be a retroactive application. DIM, by contrast, would have this court do what the Second Circuit would not: punish plaintiffs for their past failure to pen a concurrent account of time spent on this case in 1982 by reducing their *total* award by 15%.

DIM cites as authority for its position *Dubose v. Pierce,* 579 F.Supp. 937 (D.Conn. 1984) (court makes 10% reduction), *reversed and remanded on other grounds,* 761 F.2d 913 (2d Cir.1985), and *Rosario v. Amalgamated Ladies Garment Cutters' Union,* 749 F.2d 1000, 1008 (2d Cir.1984) (affirming District Court's 30% reduction for failure to keep contemporaneous time records), as well as *Orshan v. Macchiarola,* 629 F.Supp. 1014, 1019 (S.D.N.Y.1986) (court grants reduction of greater than 30%).[3] These cases, however, *justify* rather than mandate imposition of a penalty for perceived deficiencies caused by a petitioner's failure to keep contemporaneous time records. That is, they stand for the proposition that a court *may in its discretion* reduce by a certain percentage the number of hours claimed where those hours are unsupported by contemporaneous time sheets, in an effort to compensate petitioners reasonably.

The 15% reduction of petitioners' total award DIM urges is unwarranted and inappropriate. Dennis O'Brien, plaintiffs' lead counsel, has stated in affidavits, in memoranda, and in oral argument that he carefully and completely reviewed all "memoranda, briefs, pleadings, documents, files, notes, daily calendar entries and telephone and travel records" in coming to his conservative calculation of the hours he spent on this matter. ¶ 8 of Dennis O'Brien's affidavit, May 28, 1985, Filing 34. Over

defendant's objection, the court at oral argument accepted into evidence certain of Mr. O'Brien's personal records, comprising internal memoranda and calendar/diary entries for the period in question. Plaintiffs' Exhibit 1. From these documents, and from the pleadings and papers already mentioned, petitioners reconstructed their hours. The court has reviewed the material thoroughly and is convinced that it tends to support petitioners' claim that they did indeed work the disputed 1982 hours. *See U.S. v. Kirksey,* 639 F.Supp. 634, 638 (E.D. N.Y.1986) (diary entries satisfy need for contemporaneous time records). DIM, in turn, has levelled but vague criticism at petitioners' allegedly "inadequate" timekeeping for work performed on the merits in 1982, offering no evidence whatsoever that would tend to show petitioners did *not* work the disputed time. Had DIM demonstrated that petitioners' omission caused them to spend an "inordinate amount of time … on the fee application" and "numerous hours" reconstructing their time logs, then under *Carey* the court could choose *not* to compensate them for hours worked on the fee petition *itself.*[4] *Carey, supra,* 711 F.2d at 1148. Because the court finds that time spent reconstructing time records was minimal and hours spent on the fee petition were reasonable, it declines to accept DIM's argument.

■] Therefore, the petitioners should be fully compensated for the hours they worked in 1982. They are also entitled to full compensation for work performed in 1985 and 1986 before the District Court and the Second Circuit regarding fee eligibility. However, they are not entitled to compensation for the 2.5 hours they spent reconstructing their 1982 hours.

■] Next, DIM complains that plaintiffs' representation by several attorneys neces-

---

**3.** DIM also relies on *Kennecott Corp. v. E.P.A.,* 804 F.2d 763 (D.C.Cir.1986). But that case involved petitioners who "refused to provide the contemporaneous time logs" they had compiled, submitting instead stacks of "monthly bills sent … to their clients" and "generalized summaries of work," thereby "greatly hampering" review of their fee request by the court, which reduced their ultimate award by 15%. *Kennecott, supra,*

at 767. There has been no such recalcitrance— and no allegation thereof—exhibited by plaintiffs in this case to warrant the reduction.

**4.** The court notes that *Carey* authorizes not a percentage reduction of the ultimate award but a reduction in the *number* of hours (i.e. those spent on the fee petition) only.

sarily resulted in duplication of effort and with it, excessive and noncompensable hours. Plaintiffs' attorneys counter, and the court agrees, that their team litigation approach was wholly appropriate to the case, and that although there may have been a modicum of unavoidable duplication, there was never any instance in which attorneys unreasonably performed the same work. *Johnson v. Univ. Col. of Univ. of Ala. in Birmingham,* 706 F.2d 1205, 1208 (11th Cir.1983). *See also Dubose, supra,* 579 F.2d at 958 (defendant's duplication claim rejected where thirteen attorneys represented plaintiffs). In relation to Attorney Eldergill, private counsel for the Muldoon plaintiff, the charge borders on the disingenuous.

The court, mindful of its obligation to award the four attorneys of record reasonable compensation for all time each reasonably spent on the case, has studied every time log entry and annotation of this extensive record, from which it concludes that the hours spent by the attorneys were "appropriate for the scope and complexity of [this] particular litigation," *Carey, supra,* 711 F.2d at 1147, and that there was no unreasonable duplication of attorneys' efforts. Therefore, there shall be no reduction of hours.

DIM would like the court to award petitioners virtually nothing for only 90.07 of the total travel time they have claimed. It suggests that the 76.85 hours travelled in connection with the underlying litigation are not compensable because petitioners spent this time *driving.* Because their hands were on the wheel and their eyes on the road, DIM avers, petitioners' minds cannot have been on their work. Therefore, DIM suggests that time should be compensated at 20 cents per mile; in the alternative, DIM offers a mere $300 for the claim. According to DIM the 5.8 hours of Attorney O'Brien's travel time for 1985 should be disallowed for the same reason, as should all of the time he and Attorney Read spent travelling in connection with the appeal, with the exception of 3 hours on September 17, 1986 (time accompanied by Mr. O'Brien's notation "Final prep for oral argument [before the Second Circuit] on

train, taxi") and DIM concedes that these hours are properly compensated, at 50% of O'Brien's court-awarded hourly rate, because unlike the others they are supported by an annotation that work was actually performed.

The court does not believe that DIM's approach satisfactorily compensates petitioners. Like the Court for the Eastern District of New York, this court

> assumes that [petitioner], as do most lawyers, spend[s] his time traveling preparing for his court appearances. It is said that a lawyer argues three cases: one while traveling to court reflecting on what he or she will do, one while actually in court, and another after leaving court, ruminating on what should have been said and deciding how to repair any errors.

*Society for Good Will to Retarded Children, Inc. v. Cuomo,* 574 F.Supp. 994, 998 (E.D.N.Y.1983).

The Second Circuit has not ruled specifically on the compensability of attorney travel time. It *has* indicated that "a different rate of compensation may well be set for different types of litigation tasks." *Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 505 (1980). Bearing this in mind, as well as the fact that attorneys might not work quite so efficiently and productively in transit as they do in the office or at court, the court finds that the total travel time claimed here should be compensated at 50% of each attorney's hourly rate. The court declines to adopt the rule announced in *Chrapliwy v. Uniroyal, Inc.,* 509 F.Supp. 442 (N.D. Indiana 1981), despite petitioners' able championing. The "clearly articulated congressional policy of enabling plaintiffs to obtain legal counsel," *id.* at 455, does not always demand that travel hours be fully compensated. Rather, it calls for a fair determination of reasonable attorney fees based on careful evaluation of the facts of the particular case. In this case, the CLS petitioners should receive one-half their hourly rate times the hours claimed. However, the court has computed Ms. Eldergill's travel time fee at 100% of her hourly

rate, for the following reason: She requested compensation for 20.90 hours at $75 per hour, or $1567.50, plus $7.20 in costs, for a total award of $1574.70 (Filings 23 and 33). Exhibit A of Filing 23 documents satisfactorily the claimed hours. That the 6/2/82 and 7/6/82 entries do not differentiate between "work" and "travel" time is immaterial. The hours involved (1.5 hours for "Hearing, Travel" and 3.6 hours for "Conference–Travel") are so few, Ms. Eldergill's request so modest, and her representation of the Muldoon plaintiff so able and successful, that it would denigrate the judicial process to expend public funds on a further quibble over this amount to which she is so clearly entitled.

■ Having determined the *number* of hours for which counsel for plaintiffs will receive compensation and the travel time rate, the court turns to the question of hourly rate. The traditional "lodestar" formula multiplies the number of billable hours by "the hourly rate normally charged for similar work by attorneys of like skill in the area." *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977). Reasonable attorney fees are calculated according to prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). This holds true "regardless of whether plaintiff is represented by private or non-profit counsel." *Id.* Because it is "inherently difficult" to fix an appropriate market rate for lawyers' services, the Supreme Court suggested that the district courts look for guidance to "rates charged in private representations." *Id.* at 896 n. 11, 104 S.Ct. at 1547 n. 11. To that end, it required the petitioning attorney to

... inform and assist the court in the exercise of its discretion ... [by] produc[ing] satisfactory evidence—in addition to [h/er] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.* This attorneys for plaintiffs have done. *See* affidavits of David Shaw, Esq., Beverly J. Hodgson, Esq., Emanuel Margolis, Esq., Edward M. Dale, Esq., Shirley Berget, Esq. (Filing 60).

Attorney O'Brien seeks $125 per hour for work performed in 1982 and $150 per hour for work performed from 1985 through 1987; Attorney Read requests $75 per hour for work done in 1982 and $100 per hour for work done in 1986; Attorney Kostecki seeks $85 per hour for work performed in 1982; and Attorney Eldergill seeks $75 per hour for work done in 1982. Having examined the aforementioned affidavits and taken judicial notice of current billing rates in the District of Connecticut, the court concludes that the hourly rates petitioners request are well within the bounds of reasonableness.[5] The court notes further that, under *Carey*, it is entirely appropriate in the context of this "multi-year case" to use an "historic" billing rate for time claimed for 1982 and a current rate for "services rendered within the preceding two or three years"—here, 1985 through 1987. *Carey, supra*, 711 F.2d at 1153.

Usually the factors discussed above will generate a fee which fairly and adequately compensates counsel for all work reasonably performed. In the rare case, however, the figure arrived at will reflect but inaccurately an attorney's endeavor and entitlement. At such times the court may in its discretion adjust the award to take into account "more subjective factors", including the high quality of the work, the inherent complexity of the issues, the lawyer's superior skill, the risk of the litigation, and "exceptional" success. *Hensley, supra*, 461 F.2d at 435; *Carey, supra*, 711 F.2d at

---

5. The court finds that these rates, when factored into the "lodestar" equation, result in neither "windfall" nor "profit" to the CLS attorneys. Therefore it is not necessary to set the billing rate "breakpoint" Judge Newman spoke of in *New York Association For Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1152 (2d Cir.1983) (harmonizing discordance between Congressional proscription against fee applicants' receiving "windfalls" and Congressional admonishment that, in awarding fees, court should not draw distinctions between non-profit and profit-making fee applicants, by setting maximum rate for non-profit counsel).

1140; *Blum, supra,* 465 U.S. at 899, 104 S.Ct. at 1549.

CLS counsel for plaintiffs have requested that the court make an upward adjustment of their award in recognition of their "exceptional" success and the risk associated with this litigation. They ask that their respective hourly rates be increased by one-third. DIM demurs, stating that the facts of this case warrant no such modification.

■ The court agrees with petitioners that an "enhanced" award, calculated differently than they propose, is entirely appropriate here, but only on the first ground they advance. Their success *was* "exceptional", not only by virtue of the number of people benefitted[6] but especially in light of the "truly vital nature of the medical insurance benefits"[7] re-secured for plaintiffs and others like them. *See* Plaintiffs' Memorandum in Support of Petitions For Attorneys Fees, Filing 58 at 8. This fact alone justifies an enhancement. And, as petitioners note, that success significantly affected the body of law which governs attorney fees and furthered § 1983's remedial purposes. Plaintiff's Reply Memorandum of Law ..., Filing 60 at 25.

■ Trickier is the question whether the court may compensate O'Brien, Kostecki, and Read for the contingent nature of success. In *Carey* the Second Circuit cautioned that while

a component of a bonus for risk of failure may be appropriate in some cases to entice private firms to undertake difficult cases in which victory is uncertain,

*Carey, supra,* 711 F.2d at 1154, there is no need to so "induce" non-profit organizations to accept these cases, for they "exist to represent groups ... with constitutional claims at the cutting edge of the law." *Id.* Thus, an enhancement for risk awarded non-profit counsel would be unreasonable and therefore impermissible under § 1988. In reducing the district court's 25% bonus

for counsels' "exemplary" service to 10%, the court said:

Bonuses awarded to non-profit law offices, when awarded at all, should not exceed a modest percentage of the lodestar amount and should not include any increment for the uncertain risk of achieving success in the litigation.

*Id.* at 1154–1155.

Petitioners argue that the Second Circuit's mandate against awarding bonuses to non-profit firms for risk was necessarily altered by the later *Blum v. Stenson.* They point to *Lewis v. Coughlin,* 801 F.2d 570 (2d Cir.1986) as evidence that it is now permissible to award a bonus for risk in this Circuit. In *Blum,* the Supreme Court rejected an argument that an enhanced award is never appropriate under § 1988, declining in a footnote "to draw a distinction between profit and non-profit law offices" in the context of upward adjustment of the "lodestar." *Blum, supra,* 465 F.2d at 901 n. 18. In *Lewis,* decided after *Blum,* the Second Circuit made known that while risk alone might not suffice for a risk-based bonus, its coupling with a contingent fee arrangement could well entitle an attorney to an upward adjustment. But the fee applicant in *Lewis,* as defendant correctly points out, was a private-for-profit law office. It would seem, then, that risk-based enhancement to non-profit counsel remains improper in this Circuit, notwithstanding *Blum.*

For the foregoing reasons the court concludes petitioners are entitled to a bonus of a "modest percentage of the lodestar", here 15% rather than the one-third increase in their hourly rate they request. However, although there was considerable risk associated in this case where "low-income step-children were pitted against the vast resources of both the state and federal governments" (Filing 58 at 8), this court is powerless to compensate counsel for that risk.

---

**6.** A consideration whose significance the *Blum* court questioned. *Blum v. Stenson,* 465 U.S. 886, 900, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1983).

**7.** *Cf. Massachusetts Association of Older Americans v. Sharp,* 700 F.2d 749, 753 (1st Cir.1983) (termination of Medicaid benefits that causes individuals to forgo ... necessary medical care is clearly irreparable injury).

For the foregoing reasons, petitioner's fee request is granted to the extent indicated by the chart below:

|  |  |  | HOURS | HOURLY RATE | SUBTOTALS |
|---|---|---|---|---|---|
| O'BRIEN | 1982 | WORK | 125 | $125 | $15,625.00 |
|  |  | TRAVEL | 31.10 | 62.50 | 1,943.75 |
|  | 1985 | WORK | 51.25 | $150 | $ 7,687.50 |
|  |  | TRAVEL | 1.80 | 75 | 135.00 |
|  | 1986 | WORK | 114.50 | $150 | $17,122.50 |
|  |  | TRAVEL | 12.35 | 75 | 926.25 |
|  | 1987 | WORK | 14.65 | $150 | $ 2,297.50 |
|  |  | TRAVEL | 4 | 75 | 300.00 |
|  |  |  |  |  | $46,037.50 |
|  |  | (MINUS (2.5 hours × $150) RECONSTRUCTION OF 1982 HOURS) |  |  | − 375.00 |
|  |  |  |  |  | $45,662.50 |
|  |  | 15% ENHANCEMENT |  |  | $ 6,849.38 |
|  |  | GRAND TOTAL |  |  | $52,511.88 |
| READ | 1982 | WORK | 81.25 | $ 75 | $ 6,093.75 |
|  |  | TRAVEL | 25.25 | 37.50 | 946.88 |
|  | 1986 | WORK | 4.25 | $100 | $ 425.00 |
|  |  | TRAVEL | 1.50 | 50 | 75.00 |
|  |  |  |  |  | $ 7,540.63 |
|  |  | 15% ENHANCEMENT |  |  | $ 1,131.09 |
|  |  | GRAND TOTAL |  |  | $ 8,671.72 |
| KOSTECKI | 1982 | WORK | 37.65 | $ 85 | $ 3,200.25 |
|  |  | TRAVEL | 20.50 | 42.50 | 871.25 |
|  |  |  |  |  | $ 4,071.50 |
|  |  | 15% ENHANCEMENT |  |  | 610.73 |
|  |  | GRAND TOTAL |  |  | $ 4,682.23 |
| ELDERGILL |  |  | 20.90 | $ 75 | $ 1,567.50 |
|  |  | COSTS |  |  | 7.20 |
|  |  |  |  |  | $ 1,574.70 |

Therefore, the total amount in attorney's fees to be awarded against DIM is $67,440.53, to be apportioned as set out above. The parties are free to seek timely review by an Article III judge pursuant to statute, 28 U.S.C. § 636, and Local Rules.