683 F.Supp. 23 (1987)
Dale HILLBURN, by his parents and next friends Ralph and Eleanor HILLBURN; James Corbett, by his next friend Roberta Reid; Sandra Fuchs, by her mother and next friend Florence Fuchs; and Stephen Kaplanka and Mark Kaplanka, by their mother and next friend Dorothy Napolitano
v.
COMMISSIONER, CONNECTICUT DEPARTMENT OF INCOME MAINTENANCE.
Civ. No. H-82-200 (JAC).
United States District Court, D. Connecticut.
October 5, 1987.
*24 David C. Shaw, Trowbridge, Ide & Greenwald, Judith Solomon, Legal Aid Soc. of Hartford, Hartford, Conn., for plaintiffs.
Hugh Barber, Office of the Atty. Gen., Hartford, Conn., for defendant.

RULING ON MOTION FOR COSTS AND ATTORNEYS' FEES
JOSÉ A. CABRANES, District Judge:

Background
This action was brought under 42 U.S.C. § 1983 by the named plaintiffs on behalf of a class defined as follows:
All Medicaid recipients residing in or admitted to Skilled Nursing Facilities in the State of Connecticut on or after February 18, 1982, who, under defendant's policies and practices, cannot obtain the adaptive wheelchairs necessary to maintain their health and insure their effective development.
Ruling on Plaintiffs' Motion to Amend Class Certification (filed Sept. 19, 1984), at 3. Judgment for plaintiffs was entered by this court on October 8, 1985, from which both plaintiffs and defendant appealed. The Court of Appeals for the Second Circuit having affirmed the decision of this court, see Hillburn v. Maher, 795 F.2d 252 (2d Cir.1986), defendant petitioned the United States Supreme Court for a Writ of Certiorari. That petition was denied. See Heintz v. Hillburn, ___ U.S. ___, 107 S.Ct. 910, 93 L.Ed.2d 859 (1987).
By a motion filed March 2, 1987, plaintiffs applied for an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988. Defendant has opposed this application on a number of grounds. Part of the original motion (that which sought an award for the services of Ms. Shelley White) was reported settled on September 4, 1987. This court proceeded to hear testimony with respect to the remaining part of the application, which sought an award for the services of Mr. David Shaw, on September 4, 1987, and oral argument on October 2, 1987.

Discussion
It is conceded that plaintiffs were the prevailing party in this case, and that they are therefore entitled to an award of attorneys' fees pursuant to Section 1988. See Defendant's Memorandum in Opposition to Plaintiffs' Motion for Attorneys' Fees (filed June 6, 1987), at 4. Plaintiffs did not, however, by any means succeed in securing all the relief they sought. The action was brought primarily to challenge defendant's policy of refusing Medicaid payment for adaptive wheelchairs for residents of Skilled Nursing Facilities. See Hillburn v. Comm'r, Civil No. H-82-200 (JAC), Memorandum of Decision (D.Conn. July 17, 1985), at 4 [Available on WESTLAW, 1985 WL 2364]. This policy was changed by defendant in October 1983, after which plaintiffs attempted to amend their complaint to broaden the case considerably. See id., at 6-7. This court denied the motion to amend by a ruling filed on July 12, 1985, and ultimately denied all of the specific relief requested in counts 1, 2 and 4 of the complaint. The court did, however, grant other relief in connection with count 3, in the form of an order to correct deficiencies in defendant's practices for overseeing Skilled Nursing Facilities in their provision of adaptive wheelchairs and related services. See id., at 44-45.

1. Fee for the services of Mr. David C. Shaw

a. The presumptively reasonable fee

A presumptively reasonable fee under Section 1988 is reached by multiplying a reasonable rate of compensation by a reasonable number of hours expended. See Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). The burden is upon the fee applicant to establish the reasonableness of the rate, in light of prevailing rates in the community, and of the hours charged. See id. Plaintiffs base their application for the fees of Mr. Shaw on a current rate of $135 per hour. Defendant contends that a reasonable current rate would be $100 per hour.
The court has before it considerable evidence on which to base the determination of a rate for the services of Mr. Shaw, who is now an unusually experienced associate *25 in a small private law firm. This evidence consists of (1) testimony from Attorneys Joseph Garrison and David Rosen, who were qualified as experts on such matters at the hearing of September 4, 1987, to the effect that the prevailing market rate for partners in law firms engaged in similarly complex litigation is $150 per hour; (2) Mr. Shaw's Supplemental Affidavit (filed Sept. 11, 1987), representing that the rates currently charged by his firm for his services range from $90 an hour to $135; (3) the rate which formed the basis of court-awarded fees for his services in 1986, which was $100, see Connecticut Ass'n for Retarded Citizens, Inc. v. Thorne, Civil No. H-78-653 (TEC) (Recommended Ruling by Magistrate Eagan, dated August 13, 1986, approved by Judge Clarie); and (4) the affidavits Mr. Shaw has recently submitted in two other cases, which claim respectively a rate of $110 and $135. Based upon this evidence, the court concludes that a reasonable current rate upon which to base this award is $110 per hour.
There is the additional question whether this rate shall be applied to the entire five-year course of the litigation, or only to the more recent phase thereof, with an "historic rate" to be applied to the earlier phase. The United States Supreme Court has recently taken care to avoid suggesting that the use of current rates is impermissible under fee-shifting statutes like Section 1988 as a means of compensating for delay in payment. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, ___ U.S. ___, 107 S.Ct. 3078, 3081-82, 97 L.Ed.2d 585 (1987).
This permissiveor perhaps merely agnostic attitude leaves undisturbed the law of this Circuit, which is that current rates may be used for the "two or three years" immediately preceding the fee award, but that historic rates should be used for the earlier phase of protracted litigation. See New York Ass'n for Retarded Citizens v. Carey, 711 F.2d 1136, 1152-53 (2d Cir. 1983) (Newman, J.) (so holding notwithstanding the advantage of current rates in approximating compensation for inflation). The court concludes, therefore, that the rate of $110 shall be applied for services rendered from August 1, 1984 through the present, and that historic rates should be applied from the commencement of this action in 1982 up to August 1, 1984.[1] The court further concludes, based upon the record before it, including sources analagous to those mentioned above, that the rate of $90 should be applied to the earlier period of the litigation.
The plaintiffs claim hours as follows: 469.8 hours while Mr. Shaw was in the employ of the Legal Aid Society of Hartford, Inc. ("LASH"); 512.6 hours after Mr. Shaw entered private practice and until May 22, 1987, see Amended Affidavit of David C. Shaw (filed June 1, 1987), and 46.7 hours between May 22, 1987 and September 10, 1987, see Supplementary Affidavit of David C. Shaw (filed Sept. 11, 1987). Defendant counters that the following deductions should be made to the hours claimed: (1) for generally excessive hours; (2) for specifically inadequate records; (3) for generally inadequate records; (4) for hours added to the initial fee request by the Amended Affidavit, raising questions about the reporting system; (5) for failure to submit contemporaneous time records with the Supplementary Affidavit filed September 11, 1987; (6) for those hours specifically attributable to the pursuit of unsuccessful claims, as well as a percentage reduction to reflect limited success.
Upon a review of the record, the court makes deductions of 10 hours in the LASH period, and 43 hours in the period in private practice, for inadequate records. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).
The court also makes deductions to reflect the degree of success, which require more lengthy explanation. "[T]he extent of success is a crucial factor in determining *26 the proper amount of attorney's fees" under Section 1988. Hensley v. Eckerhart, 461 U.S. at 440, 103 S.Ct. at 1943. Plaintiffs urge that we treat their claims as interrelated for purposes of this analysis, and this the court is for the most part inclined to do. The court is mindful that under Hensley "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Id. But the mandate of Hensley is also that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id.
We have already noted that the plaintiffs achieved only limited success in this litigation, and that plaintiffs both during trial and after trial attempted to expand significantly the scope of the case, including an unsuccessful attempt  first made in October 1984, six months after the conclusion of the trial  to amend the complaint. See this Ruling, above at 3, and Hillburn v. Comm'r, Civil No. H-82-200 (JAC), Memorandum of Decision (D.Conn. July 17, 1985), at 6-7 [available on WESTLAW, 1985 WL 2364]. The court determines that for these interrelated reasons, a percentage deduction is appropriate under Hensley in order to achieve a reasonable fee. The court finds, however, that it would be inequitable to apply the same rate of reduction to the LASH period as to the private practice period, in view of the concentration of effort on expanding the litigation in the latter stage. The court therefore concludes that a deduction of 10% shall be applied to the LASH period and of 40% to the period in private practice.
Thus we arrive, finally, at a presumptively reasonable fee for the services of Mr. Shaw as follows: 413.8 hours at a rate of $90 per hour for the LASH period ($37,242.00), and 309.8 hours at a rate of $110 during the period in private practice ($34,078.00). But we are not at our destination yet.

b. Adjustments to fee

The plaintiffs claim an upward adjustment, or "multiplier," for the period Mr. Shaw was in private practice, in order to compensate for the contingency of non-payment and excellent results achieved.
In Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 107 S.Ct. at 3087, four justices of the Supreme Court concluded that a multiplier for assuming the risk of loss is impermissible under fee-shifting statutes. Justice O'Connor concurred in the judgment but dissented from the proposition that Congress intended to foreclose consideration of contingency in fixing a reasonable fee. See id. at 3089. The law in this Circuit has been that contingency for risk of loss may be a factor in awarding a multiplier, but does not stand alone as justification. See Lewis v. Coughlin, 801 F.2d 570, 575 (2d Cir.1986).
Assuming that the Supreme Court's recent decision does not preclude consideration of contingency as a factor, this court takes note that by the time Mr. Shaw entered private practice, defendant had sufficiently altered its practices to assure that plaintiffs would be the prevailing party in this litigation. Thus there was no contingency of nonpayment for the period for which the multiplier is sought. In any event, with or without contingency considered as a factor, the court does not find here the extraordinary combination of circumstances under which a multiplier is appropriate. See Blum v. Stenson, 465 U.S. at 898-99, 104 S.Ct. at 1548; Hensley v. Eckerhart, 461 U.S. at 435, 103 S.Ct. at 1940.

2. Fee for Ms. Judith Solomon
Plaintiffs apply also for an award covering the services of Ms. Judith Solomon, who is on the staff of LASH, for assistance in preparation of the fee application. They claim 20.1 hours at a rate of $125 per hour. Ms. Solomon has been in practice somewhat less long than Mr. Shaw. Accordingly, the court finds that a reasonable rate for Ms. Solomon's services is $100 per hour. The award for her services shall be $2,010.

3. Fee for Mr. Joseph Garrison
Finally, plaintiffs apply for an award to cover the services of Attorney *27 Joseph Garrison, who testified on their behalf before this court in connection with the fee application. Mr. Garrison has submitted to plaintiffs a bill for $525 for these services, representing 3.5 hours at a rate of $150 per hour.
Neither the rate nor the hours claimed in connection with Mr. Garrison's fee is disputed. Defendant does, however, question whether more than $30 per day for the participation of an expert witness is proper in light of the Supreme Court's recent decision in Crawford Fitting Co. v. J.T. Gibbons, Inc. and Champion Int'l Corp. v. Int'l Woodworkers of America, ___ U.S. ___, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). We read that opinion, as did the concurring and dissenting justices, to apply only to fee awards under 28 U.S.C. §§ 1920 and 1821(b) and Rule 54(d), Fed.R.Civ.P., and not to reach the question of fee awards under 42 U.S.C. § 1988. See id., 107 S.Ct. at 2499 (Blackmun, J., concurring); see id. at 2500 n. 1 (Marshall, J. and Brennan, J., dissenting). This court concludes, therefore, that the application with respect to Mr. Garrison shall be granted.

Conclusion
In sum, the court awards to plaintiffs $37,242.00 for the services of Mr. Shaw while he was in the employ of Legal Aid Society of Hartford and $2,010.00 for the services of Ms. Solomon, who is now in the employ of that organization. In addition, the court awards $34,078.00 for the services of Mr. Shaw while he was in private practice.[2] Finally, the court awards $525 for the services of Mr. Garrison. The total award is therefore $73,855.00.
The sums in question shall be paid no later than 60 days following the entry of this ruling.
It is so ordered.
NOTES
[1] It should be emphasized that this periodization reflects the dictates of New York Ass'n for Retarded Citizens v. Carey regarding the use of historic rates, and does not represent a discrimination between the rates appropriate for attorneys associated with non-profit firms and those associated with private firms. It simply happens that the periods of Mr. Shaw's tenure at Legal Aid Society of Hartford, Inc. and in private practice coincide with the periods which should be subject, respectively, to historic and current rates.
[2] See n. 1, above.